(45 South. 545.)

No. 16,988.

VIAL v. ELFER et al.

(Feb. 8, 1908.)

1. ELECTIONS — PRIMARIES — CONTEST — AUTHORITY OF CLERK OF COURT.

The clerk of the district court is without authority to order the issuance of a rule nisi at the instance of a candidate contesting the decision of a committee as to the result of a primary election under section 25, Act No. 49, p. 77, of 1906.

2. SAME—APPLICATION FOR RELIEF.

Under section 25, Act No. 49, p. 77, of 1906, a candidate who feels aggrieved by the decision of the committee as to the result of a primary election has 24 hours within which to apply to a court of competent jurisdiction for relief, and such application, in the form of a petition, may be delivered to the clerk (whose duty it is to receive and file it), and, when so delivered, is an application "to said court," within the meaning of the law, whether the judge be present or absent.

(Syllabus by the Court.)

Appeal from Twenty-Eighth Judicial District Court, Parish of St. Charles; Prentice Ellis Edrington, Judge.

Action by Leon C. Vial against Charles Elfer and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Robert James Perkins and James Wilkinson, for appellant. John Curd Wickliffe, for appellees.

### Statement of the Case.

MONROE, J. It appears from the record in this case that at the primary election held in the parish of St. Charles on Tuesday, January 28th of this year, plaintiff and the defendant, Elfer, were opposing candidates for the nomination to the office of assessor; that on the Friday next following the election, the Democratic parish executive committee ordered that a new election be held with respect to said nomination; that within 24 hours thereafter plaintiff caused to be filed in the district court a petition, alleging that he had received a majority of the votes cast at said election, and that, for reasons set forth, the action taken by the committee was unauthorized, fraudulent, and illegal, and praying that his opponent and the members of the committee be ordered to show cause why it should not be so decreed, and why he should not be held to have received the nomination in contest, to which petition was attached plaintiff's affidavit to the truth of the allegations therein contained, and his further affidavit, to the effect that the judge of the district court was then absent from the parish; and, upon which petition, the clerk of the court made an order to show cause as prayed for. It further appears that on Monday morning (February 3d), upon the return of the judge to the parish, plaintiff's counsel presented to him a supplemental application, in the form of a motion, stating what had been done, and further alleging "that, in order to avoid all question as to the power or authority or the legality of said order, mover now desires and prays for a further and additional order from the judge" to the same effect as that granted by the clerk, and that Elfer, through his counsel, objected to the granting of such order, on the ground "that the application came too late," which objection was sustained; that Elfer thereupon filed a pleading, in which he sets up that the order made by the clerk was unauthorized and was of no effect; "that more than 24 hours having elapsed since the parish democratic committee took the action complained of, * * * and adjourned, and no valid order having been obtained herein for a rule, and no valid rule having been applied

for or issued, the action of said committee is now final and cannot be reviewed," and he prays that plaintiff's suit be dismissed; but "in the event that the foregoing prayer be rejected, * * * and, further answering, respondent" proceeds to negative the allegations of the petition, and to show cause why the action of the committee should be sustained.

On the part of plaintiff, it was excepted that defendant, having appeared for the purpose of objecting to the granting of the supplemental order, could not be heard to object to the sufficiency of the citation under the order granted by the clerk; and, the whole matter being before the court, the parties respectively, and in case their exceptions should be overruled, asked leave to introduce evidence upon the issues of fact; plaintiff, among other things, desiring to prove that the judge was absent from the parish, and that he, plaintiff, did not know his whereabouts, and defendant, asking leave to prove that the judge might have been reached. The court, however, ruled as follows, to wit:

"These parties were given 24 hours to apply to the court, but they appealed to the clerk instead of presenting their application to the court, as the law provides. And, the court being of opinion that the clerk had no right to issue the rule and that there is no rule before the court, therefore the rule issued by the court [clerk] is hereby dismissed, at plaintiff's costs."

And from the judgment so rendered plaintiff prosecutes this appeal.

### Opinion.

Act No. 49, p. 66, of 1906, being "An act to provide for calling, holding, conducting, and regulating, primary elections," etc., provides (section 23) that the returns of the elections held for United States Senators, Congressmen, and state officers who are voted for throughout the state shall be made to the Secretary of State, and that, in all other cases, such returns shall be made to the respective chairmen of the committees ordering the primary elections.

"Sec. 25. * * * That, in all elections where returns are, by this act, provided to be made to the respective chairmen, * * * it shall be the duty of said chairmen, immediately upon receiving said returns, to, at once, open the same and cause same to be tabulated and compiled, and, at 12 o'clock, noon, on the third day after the primary, the said committee, ordering the same, shall reconvene at the same place and the chairman thereof shall submit to it the tabulated statement showing the result of said primary together with the original returns received by him."

"That any candidate, feeling aggrieved at the result of the said primary, shall, then and there, file his written request, setting forth, in detail, clearly and distinctly, his grievances, and the committee shall, immediately, proceed to hear and decide the same and proclaim the results of said primary; provided, however, that any candidate, feeling aggrieved by the decision of the committee, shall have the right to have the same reviewed by a court of competent jurisdiction, and the procedure, trial and appeal shall be the same as hereinbefore provided for review of decisions rendered by committees in relation to nomination of candidates for state offices."

The method provided (in a preceding paragraph of the same section) for reviewing "the decisions rendered by committees in relation to nomination of candidates for state offices" is as follows:

"* * * That any candidate, feeling aggrieved by the decision of the committee, shall have the right to have the same reviewed by a court of competent jurisdiction; and, provided, further, that he shall, within twenty four hours after the decision of the committee, apply to said court, which shall issue a rule requiring the person declared by the committee to be the nominee of the party to show cause, within forty eight hours, why the action of the committee should not be reversed and set aside and the relief asked for granted, which rule shall be tried and decided and the judgment thereon signed, either in open court or at chambers, within three days thereafter. An appeal from such decision may be granted on simple motion, without citation, and shall be heard, on the original record and testimony, and finally decided within five days from the rendition of the judgment of the court of first instance; and, should said case not be so finally decided on appeal, within said delay, then, the decision of said committee shall be final and effective."

As we have seen, the learned judge of the district court was of opinion, and so held, that the requirement that the party aggrieved "shall, within twenty four hours after the decision of the committee, apply to said

court," means that such application must of necessity be made to the judge in person. But in this we think he was in error.

Plaintiff was obliged to make his application to "a court of competent jurisdiction," and the only court answering that description was, and is, the district court of the Twenty-Eighth judicial district.

That district is, however, composed of the parishes of St. John the Baptist, St. Charles, and Jefferson, and the judge of the district court is required to sit alternately in each of those parishes, as the public business may require, keeping his court in continuous session during 10 months of the year. He cannot hold such session, or be present himself, in more than one parish at a time; but, whether he be holding session, or be present himself in one or the other of the parishes constituting the district, the district court of each of the parishes is, and must be, always open for certain purposes, since the Constitution provides that (article 6):

"All courts shall be open, and every person, for injury done him in his rights, lands, goods, person, or reputation, shall have adequate remedy, by due process of law," etc.

And it would be no answer to the complaint that the district court of the Twenty-Eighth judicial district in and for the parish of St. Charles was closed to say that the district court of the Twenty-Eighth judicial district in and for the parish of Jefferson was in session in that parish. It is true that, for some purposes, the district court of the Twenty-Eighth judicial district may be regarded as but one court. It is equally true that, for other purposes, it is a distinct tribunal when sitting in either of the parishes constituting the Twenty-Eighth judicial district, and possesses and exercises a jurisdiction which it does not possess and exercise when sitting in another parish; the suit now under consideration being within its jurisdiction only as brought in the parish of St. Charles. And it is in conformity with the spirit and (more recently) with the letter of the constitutional requirement that all courts shall be open, etc., that the Code of Practice, after defining a petition to be "a written document, addressed to a competent judge," etc., and after requiring that such petition shall mention "the name or title of the court to which it is addressed," further provides that it shall be "delivered to the clerk of the court to which it is addressed, who shall receive it, and [unless service be waived] make out a * * * copy of the same * * * and * * * annex to that copy a citation, addressed to the defendant," summoning him to comply with the demand therein contained, or make answer thereto that the Constitution itself provides that (article 123) "the General Assembly shall have power to vest in clerks of court authority to grant such orders and to do such acts as may be deemed necessary for the furtherance of the administration of justice," etc., and that, in the exercise of the authority so granted, the General Assembly has vested the clerks with authority to act in many cases, whether the judge be present or absent, recused or acting, in which such action is not considered to involve the exercise of judicial power. Act No. 43, p. 54, of 1882.

The words "judge" and "court" are no doubt often used as practically synonymous terms, and from the definitions given by the law-writers and others of the word "court" (as applied to a judicial tribunal) it might be deduced that there can be no such thing as a court without a judge. Upon the other hand, it has been said that:

"Certainty both as to time and place is essential to the conception of a court of justice; it would be eminently Caligulan could it act when and where it pleases the judge. Without recourse to the notion of a court as a sort of incorporate entity, it is obvious that a judge does not, at all times and places, constitute a court, and that he cannot, when he pleases, enforce his judicial power. He becomes a judge when he is appointed or elected, but he becomes a court only when at the time and place designated by law he performs his judicial duty." Venhoff v. Morgan, 11 Ky. Law Rep. 276, 278; 11 Cyc. p. 655, note.

But neither definitions nor general expressions in the opinion of the courts of other jurisdictions altogether meet the requirements of the present situation, the rights of the parties with respect to which must be determined in accordance with the provisions (somewhat peculiar, perhaps) of the constitutional and statutory law of this state.

The Constitution, as we have seen, authorizes the General Assembly to vest in clerks of court the power to grant such orders and do such acts as may be deemed necessary for the furtherance of the administration of justice.

The Code of Practice provides that the clerk "shall receive" any petition addressed to the court, and shall issue citation thereon. Act No. 43, p. 54, of 1882, in express terms, provides that:

"Whether the judge be present or absent from the parish, the clerks * * * shall have power * * * to grant orders for writs of arrest, attachment, sequestration, provisional seizure, and to fix the amount of bond therefor, except when the amount is fixed by law," etc.

And, further, that:

"In the absence of the judge from the parish, or in case of his recusation, they shall have power to grant writs of injunction, allow interventions, grant orders of third opposition, with or without injunction, appoint special * * * tutors; * * * order the execution of wills; and confirm testamentary executors, provided no opposition be made thereto," etc. Act No. 43, pp. 54, 55, §§ 1, 4, of 1882.

And Act No. 75, p. 97, of 1884, confers upon the clerks the further power to grant orders of garnishment, under writs of fieri facias or attachment, and orders of appeal upon its being shown "by the oath of the party or his attorney" that the judge is absent or recused. It can hardly be said, therefore, that, under our law, there can be no such thing as a court without a judge, since quoad a matter which must be acted on in the court of a particular parish (whether by the clerk or the judge) and can be acted on nowhere else, though there be no judge within the jurisdiction, or the judge be recused, the needed action is provided for, which could not

be the case if, in the contemplation of the lawmaker, there were no court. We take it, then, that, for the purposes of the institution of a suit, the filing of an intervention or opposition, the lodging of an appeal, or the assertion of any right the preservation of which, under the law, is dependent upon the making of an application to a particular court, at a particular time, such court is always open at the place where the law establishes it, and that such application may be delivered to the clerk (whose duty it is to receive and file it), and, when so delivered, is an application to the court, whether the judge be present or absent.

Where the preservation of the right is made to depend, not upon the making of the application, but upon action to be taken by the court, a different case would no doubt be presented. Thus, for the purpose of interrupting prescription, it would do no good merely to institute a suit, unless such action were followed by the service of citation; nor would it avail to stay the flight of an absconding debtor to file a sworn petition setting forth the plaintiff's claim and the grounds relied on for the obtention of a writ of arrest; and in such and similar cases the law (as we have seen) has provided that the necessary action may be taken by the clerk.

In the case at bar, all that was needed to interrupt the prescription of 24 hours, established by the statute, was that the plaintiff should apply to the court for the relief sought by him, and he so applied. Beyond that, the matter rested with the court, and as it would not have been within plaintiff's control, even had the judge been present, plaintiff cannot be made to suffer because of the failure of the court to act, whether on account of the absence of the judge or for any other reason. It has been suggested that it was competent for the clerk to make the order in question as being in the nature of a citation. Article 123 of the Constitution (already quoted, in part), however, provides that "in all such

cases [i. e., where authority is conferred on the clerk] the powers thus vested shall be specified and determined," and, whilst the clerk is specifically authorized to issue citation in an ordinary suit, he is not so authorized to make an order to show cause in a summary proceeding of this character.

It is therefore ordered, adjudged, and decreed that, in so far as the judgment appealed from holds that the order, made upon plaintiff's petition by the clerk, was unauthorized, the same be affirmed, and that, in so far as said judgment holds that plaintiff's application was not made to the court within the time, as required by law, and that it was not the duty of the judge a quo to order the issuance of the rule nisi, as prayed for, the same be annulled, avoided, and reversed.

It is further ordered that this case be remanded to the district court to be there proceeded with in accordance with the views expressed in the foregoing opinion and the law, the costs of the appeal to be paid by the appellees, and those of the lower court to await the final judgment in the case.