165 So. 167

BROWN v. DEMOCRATIC PARISH COM-
MITTEE OF ST. BERNARD PARISH et
al., and three other cases.

Nos. 33724–33727.

Dec. 3, 1935.

J. Bernard Cocke, Bertrand ·I. Cahn, Michael E. Culligan, Philip Gensler, and Joseph O. Schwartz, all of New Orleans, for appellants.

Lawrence W. Bergeron and John R. Perez, both of New Orleans, for appellees.

FOURNET, Justice.

This is a mandamus proceeding by candidates for public offices to compel the Democratic Parish Executive Committee of St. Bernard Parish to certify their names for the respective offices for which they filed their notices of intention to run. They were duly protested before the committee which sustained the protests and the present proceeding resulted.

The district judge overruled an exception of ratione materiæ to the jurisdiction

of his court but maintained a plea of prescription. The relators have appealed.

■ The exception to the jurisdiction of the court is predicated upon the fact that the trial judge fixed the hearing twelve days after the application for writs of mandamus was filed, instead of within five days, as is expressly provided in the Primary Election Law under sections 11 and 27 of Act No. 97 of 1922, as amended by Act No. 110 of 1934 (section 1) and Act No. 28 of the Second Extra Session of 1935 (section 1).

The record shows that the trial judge accepted full responsibility for having fixed the hearing seven days beyond the time provided for by the statute, stating in effect that it was impossible for him to fix it at an earlier date. He, therefore, concluded that since the relators were in no way at fault in fixing the hearing beyond the five-day period, they could not be deprived of their rights to a judicial hearing. While it is true that it is through the primary election statute that the courts have jurisdiction of political matters of this nature and the provisions of the statute, fixing certain periods of time within which action must be taken, should be obeyed or carried out, nevertheless we do not feel that any act of the district judge in fixing the hearing beyond the five-day period should be construed as completely divesting him of jurisdiction over the case. The defendants could have objected to this action on the part of the trial court, as well as relators; but it appears that neither of them did so, except when defendants filed the exception to the jurisdiction of

the court ratione materiæ. The court having accepted jurisdiction of the matter by signing the order, it can neither logically nor reasonably be said to have automatically divested itself of jurisdiction by placing the hearing beyond the period provided by the statute. Vial v. Elfer et al., 120 La. 673, 45 So. 545.

■ The defendants also filed an exception of misjoinder of parties defendants, contending that under section 11 of Act No. 97 of 1922, as amended by Act No. 110 of 1934, § 1, the Parish Executive Committee alone should be made a party defendant. The pertinent part of this section reads as follows:

"*Either party* shall have the right to appeal from the decision of the committee, * * * procedure and appeal shall in all things and as far as applicable be as provided for contested election cases under Section 27 of this act, except that the executive committee whose ruling is complained of shall be made party defendant."

We do not construe this language to mean that the Parish Committee should be the only defendant to the exclusion of other parties who may be vitally interested in the litigation. The contestors opposed to relators were real parties in interest and, therefore, were properly joined as defendants. Porter v. Conway, 181 La. 487, 159 So. 725.

■ Defendants also filed exceptions of no right or cause of action on the ground that the relators failed to allege that they were residents of the parish of St. Bernard, qualified electors of that parish for

the particular ward for which they offered themselves as candidates, and that they were affiliated with the Democratic Party calling the election.

In the case of Melerine v. Democratic Parish Executive Committee for Parish of St. Bernard, 164 La. 855, 114 So. 711, we held that such allegations were not necessary; it being sufficient to allege due filing of application and intention to become a candidate and sustaining of objection to candidacy by the committee, since the Primary Election Law of this state requires objection to be set forth in detail, and this court can only review the decision of the committee.

The allegations of the petition bring this case within the ruling of the above authority.

■ The plea of prescription is based upon sections 11 and 27 of Act No. 97 of 1922, as amended by Act No. 110 of 1934 (section 1), and Act No. 28 of the Second Extra Session of 1935 (section 1), the pertinent parts of which read as follows:

"Section 11. * * * Either party [meaning the Contestor or the Contestee] shall have the right to appeal from the decision of the committee to any court of competent jurisdiction, and that the jurisdiction of the court, time of filing petition and answer, procedure and appeal shall in all things and as far as applicable be as provided for contested election cases under Section 27 of this act."

"Section 27. * * * *No contest shall be entertained unless brought within two days after the official promulgation of the result*

*of the election, made by the Secretary of State, as provided herein."* (Italics ours.)

The word "promulgate" is defined in Funk & Wagnalls Standard Dictionary as follows:

*"To make known or announce officially and formally to the public."* (Italics ours.)

See, also, Webster's New International Dictionary, Second Edition.

50 Corpus Juris, p. 720: "Promulgate— To publish; *to announce officially;* to make public as important or obligatory." (Italics ours.)

The record shows that the committee met on October 28, 1935, and closed its hearing about 3:30 o'clock p.m. There was an agreement between the relators' counsel and the members of the committee that Mr. Louis Bagneris at Arabi would be notified of the committee's decision. The committee reached its conclusions about 4:45 o'clock p.m. and announced it to those who were present at the courthouse, but it appears that the relators and their attorneys had absented themselves prior thereto. The deputy sheriff went to the home of Mr. Louis Bagneris at the address agreed upon, but was informed by Mr. Bagneris' father that he had departed and would not be back for some time to come. The deputy sheriff returned several times for the purpose of serving Mr. Bagneris, but each time he failed to find him at home. At 11 o'clock that night, October 28, 1935, the chief deputy sheriff telephoned one of the attorneys for relators of the action of the committee and of his inability to serve Mr. Bagneris, due to the fact that he was not at home, although several attempts had been made to reach him. The attorney then requested the deputy to serve the notice of the committee's decision upon him at his office in New Orleans the following morning (October 29, 1935) at 10:15 a.m. This was done. The present mandamus proceeding was instituted at 9:15 a.m. on October 31, 1935. *The law does not provide in what manner the decisions of the committee shall be promulgated.* The purpose of promulgation is to give notice. The record clearly shows that the attorneys for the relators were notified and had knowledge of the committee's action on October 28, 1935, at 11 o'clock p.m. Relators from that time, therefore, had to bring the mandamus suit within two days under the express provisions of the statute. By mathematical calculation it is obvious that they failed to do so. This court has repeatedly placed a liberal construction upon the language of the Primary Election Law in favor of those offering themselves as candidates for public office, but it has consistently and uniformly enforced the prescriptive periods of the statute. To extend these provisions in order to allow a greater time than expressly set forth in the statute is equivalent to legislating by the court. This is the province of the Legislature and not the judiciary. In the instant case, after two full days had elapsed from the time that the relators' attorneys had actual knowledge of the committee's action, the relators instituted their action in court. Under the plain provisions of the statute this was too late. State ex rel. Dunshie v. Fields et al., 164 La. 954, 115 So. 45, 46, 57. We, therefore, conclude that the

trial court properly sustained the plea of prescription of two days.

There are certain other points with reference to the merits which were heard by the trial court because he had referred the exceptions to the merits. The above expressed views make it unnecessary to consider the other issues.

For the reasons assigned, the judgment appealed from is affirmed.

HIGGINS, Justice (concurring).

I concur fully in the views expressed in the majority opinion in this case. No technical advantage is sought to be taken of the relators and a liberal view of the case has been taken in their favor. It is conceded that their attorney was notified of the action of the committee in disqualifying relators as candidates and that they permitted more than 48 hours thereafter to elapse without bringing the present suits. The majority opinion does not state that due to the fact that the representative of these candidates absented himself from the place where he agreed to remain until the service of the notice of the decision of the committee was made upon him, that relators thereby abrogated the verbal agreement entered into between the members of the committee and counsel for relators; and hence the announcement of the opinion of the committee to those present at the courthouse was promulgation or notice to relators of the committee's action in disqualifying them. Nor does the majority opinion state that, because the deputy sheriff was unsuccessful in a number of attempts to serve notice on the relators' representative at his home, until the deputy was told by the representative's father that he had gone across the lake, that that fact, together with the previous announcement of the decision at the courthouse. would be notice to the relators of the promulgation. The majority opinion does say that notice to the attorney for the relators of the committee's decision in disqualifying them as candidates was sufficient notice of the promulgation of the committee's decision. The law does not provide for any formal notice of promulgation in a matter of this kind. The attempt to serve formal notice upon relators' representative was frustrated by his own actions or fault. The deputy sheriff, therefore, reasonably and fairly resorted to the next best thing, which was to notify relators' attorney. Their counsel knew that these candidates had only 48 hours under the provisions of the Primary Election Law, within which to file proper proceedings in court for the purpose of setting aside the committee's decision. That period of time was permitted to elapse from the time the attorney knew of the committee's decision without the suits being filed. He filed them ten hours too late, although he had two days within which to file them.

To say that the notice to the attorney for the relators was not sufficient notification of the promulgation of the committee's decision, because it was informal, especially when the Primary Election Law does not provide for the service of a formal notice of promulgation, is to extend the prescriptive period beyond what the Legislature has expressly stated in the

Primary Election Law. It is easy to understand how there can be a difference of opinion in the interpretation of ambiguous language sometimes used in the various statutes and decisions; but it is difficult to see how simple arithmetic, which is an exact science, can be misunderstood, and 48 hours lengthened by a liberal interpretation to 58 hours.

In the recent case of Frank C. Moran v. Jules A. Grasser, Chairman, etc. (No. 33699 of the docket of this court), which came to this court on application for writs, the candidate, who had been protested, obtained an injunction from the district court against the Orleans Parish Democratic Executive Committee for the purpose of preventing the committee from considering the reasons assigned why he should be disqualified in the protest filed by his opponent under section 11 of Act No. 97 of 1922, as amended by Act No. 110 of the Regular Session of 1934 (section 1). The trial judge issued the injunction on the ground that the committee having permitted more than 48 hours to elapse from the time that the candidate was notified of the protest against his candidacy until the time set by the committee for the hearing of the protest, the committee was thereby automatically divested of its jurisdiction and authority to hear, consider, and decide the issues. The candidate who filed the protest applied to this court for writs of certiorari, prohibition, and mandamus. Six members of this court, the writer being absent, refused to grant the writs.

In short, although the effect of the decisions of the lower court and this court was to prevent the candidate, who protested the qualifications of his opponent from being heard before the committee and in the courts on those issues, as expressly provided by the Primary Election Law, both the lower court and *this court rigidly enforced the 48 hour prescriptive period*. This is obvious when we consider that both courts held that the sending by registered mail of a copy of the protest to the protested candidate by his opponent was sufficient notice to start the prescriptive period running, although the committee had never served a copy of the protest upon the protested candidate, as required by section 11 of Act No. 97 of 1922, as amended.

ODOM, J., dissents, being of the opinion that the prescriptive period began at 10:15 o'clock a.m. on October 29th, when the official notice of the action of the committee was served on relators' attorney.

O'NIELL, Chief Justice (dissenting).

Section 11 of Act No. 97 of 1922, as amended by Act No. 110 of 1934, pp. 428, 429 (section 1), provides that, in a suit of this character, the jurisdiction of the court, the time of filing the petition and answer, the procedure and appeal shall, "in all things and as far as applicable be as provided for contested election cases under Section 27 of this act, except that the executive committee whose ruling is complained of shall be made party defendant," etc. Section 27 of the act, as amended by Act No. 28 of the Second Extraordinary Session of 1935 (section 1), referring to contested election cases, declares that:

"No contest shall be entertained unless brought within two days after the official promulgation of the result of the election, made by the Secretary of State, as provided herein." The defendants in the present cases pleaded that these suits were not brought within the two days prescribed by the statute. There is nothing in the statute prescribing the method of promulgation of the findings or rulings of the committee in the matter of a contest of the qualifications of a candidate for the party nomination. Hence there is some doubt as to how the promulgation shall be made, and as to when the two days (within which a suit may be brought) shall begin. In these cases, it was agreed between the contestees, on the one hand, and the executive committee, on the other hand, that notice of the rulings of the committee should be served upon Louis Gagneris, Jr., at his residence, at Arabi, in the parish of St. Bernard. It was agreed, as I understand, that the serving of the notice upon Mr. Bagneris, as the representative of the contestees, should constitute, or take the place of, a promulgation of the findings or rulings of the committee, and that Mr. Bagneris should remain at his place of residence to receive the notice. The committee came to its conclusions and adjourned at 4:45 p.m. on the 28th day of October, 1935. At about 5:15 that evening a deputy sheriff was sent to the residence of Louis Bagneris, Jr., to serve the notice. Mr. Bagneris was not at home, and his father informed the deputy sheriff that Bagneris, Jr., had gone across the lake, and that he (the father) did not know when his son would return. Having made several calls at the Bagneris residence, in an effort to serve the notice, the deputy sheriff reported to the chief deputy that he was unable to serve the notice upon Louis Bagneris, Jr. At 11 o'clock that night, the chief deputy telephoned to the attorney for the contestees, at his residence, in New Orleans, that Bagneris, Jr., could not be found; and, in the telephone conversation, it was agreed that the notice should be served upon the attorney, at his office, in New Orleans, after 9 o'clock on the next morning, the 29th of October, 1935. Accordingly, the notice was served upon the attorney by a deputy sheriff, and the attorney wrote and signed an acceptance of service on the notice at 10:15 a.m. on the 29th of October, 1935. The suits were filed at 9:15 a.m. on the 31st day of October, 1935; which was within two days from the time of service of the notice upon the attorney for the contestees.

Considering that there was no "official promulgation" of the findings or rulings of the committee, my opinion is that the filing of the suit two days from the service of the notice upon the attorneys for the contestees was sufficient compliance with the requirements of section 27 of Act No. 97 of 1922, as amended by Act No. 110 of 1934 (section 1), "as far as applicable." The agreement that the two days should commence from service upon a designated representative of the contestees was not contrary to law; and, when the representative thus designated could not be found, service of the notice upon the attorney for the contestees should have been deemed a compliance with the agreement

to serve the notice upon their representative.

The deputy sheriff who telephoned to the attorney at 11 o'clock on the night of the 28th of October testified that he then informed the attorney, in the telephone conversation, of the findings or rulings of the committee. The attorney did not testify in the case. I take it, therefore, that the deputy sheriff did inform the attorney of the findings or the rulings of the committee, in the telephone conversation; but I do not consider that the giving of the information to the attorney, in that informal way, and at that hour of the night, should be deemed to be, or should take the place of, an "official promulgation."

I consider that the formal notice upon the attorney, at his office, the next morning, took the place of an "official promulgation," because it was agreed that such a service of notice upon a representative of the contestee should be deemed sufficient; and, when it was not possible to serve the notice upon the designated representative, the service upon the attorney for the contestees was the next best method of complying with the agreement.

My opinion, therefore, is that the judge of the district court erred in sustaining the plea of prescription of two days. This is the only ground on which the judge dismissed these suits. I agree with him that the plea to the jurisdiction ratione materiæ was not well founded. The exception of misjoinder of parties defendant, and the exception of no cause of action, also, were, in my opinion, not well founded. On the trial of the case on its merits, the con-

testees, or plaintiffs in the suit, made out their case.

For these reasons I am of the opinion that the judgments appealed from should be reversed.

ROGERS, Justice (dissenting in part and concurring in part).

I find myself unable to subscribe to the majority ruling maintaining defendants' plea of prescription. For my part, I think the plea is untenable.

It is stated in the majority opinion that the relators and their attorneys had absented themselves prior to the time the defendant committee reached and announced its conclusions to those who were present in the courthouse. It is true relators and their attorneys were not present when the committee left its consultation room after reaching its conclusions. But their absence was not due to any willfulness or carelessness on their part. It was due wholly to the agreement which they had entered into in good faith with the defendant committee that they would receive official notice of its findings or rulings.

As I understand the record, it shows that after hearing the protests against the candidacies of a number of persons, among whom were relators, the defendant committee went into executive session for the purpose of considering the protests. This was about 3:30 p.m. on October 28, 1935. The committee under the law had twenty-four hours in which to render a decision. At the time the protests were taken under advisement, no notice nor indication was given relators or their attorneys as to

when the committee would reach its decision on the protests. It being late in the evening, counsel for relators living in New Orleans and relators themselves living at widely separated parts of the parish, it was agreed by the relators and the defendant committee that when the committee should render a decision on the protests, official notice of its decision would be served on Louis Bagneris, Jr., a resident of Arabi, St. Bernard parish. It was under these circumstances and because of the agreement in question that relators and their attorneys left the courthouse for their respective homes.

There were eleven contests in all submitted to the committee for its consideration and decision. Apparently neither the relators nor the members of the committee had any reason to expect that the committee would be able to dispose of the protests as promptly as it did. The committee's consideration of the protests and its findings thereon were completed that same afternoon, to wit, at 4:45 p. m. on October 28, 1935.

The so-called announcement of the committee's decision to persons present at the courthouse clearly was nothing more than statements to that effect made by individual members of the committee in casual conversations carried on with the various bystanders. These statements in no sense constituted notice, official or otherwise, of the committee's decision and were not intended as such.

It is conceded in the majority opinion that it was necessary to promulgate the decision of the committee; that is to say,

to give relators notice of the decision. It is also conceded in the majority opinion that the law does not provide in what manner the decisions of the committee shall be promulgated; that is to say, in what manner notice thereof shall be given. In these circumstances, no law prohibiting, I see no reason why interested parties could not lawfully agree upon the manner and form of the required notice.

I differ from the view expressed in the majority opinion that the telephone message received by one of relators' attorneys at his home in New Orleans at 11 o'clock on the night of October 28, 1935, was equivalent to the notice required by law or by the agreement of the parties. The chief deputy sheriff called relators' attorney to the telephone at that place and time solely for the purpose of advising him that Louis Bagneris, Jr., the person designated, could not be found for service of notice.

It is true Mr. Bagneris was not at home after 5:15 o'clock on the evening on which the committee rendered its decision, and on which the deputy sheriff called to serve the notice on him. But there was no time limit agreed upon in which Mr. Bagneris was to be served with the notice of the committee's decision, and he had no reason to suppose that the attempt to serve the notice would be made as promptly as it was done.

I see no reason why the deputy sheriff should not have called at the home of Mr. Bagneris the next morning, instead of having the chief deputy sheriff telephone to relators' attorney in New Orleans at 11 o'clock that same night.

The fact that the chief deputy sheriff, in the telephone conversation, incidentally informed relators' attorney of the committee's decision was not, and in the very nature of things could not be considered, an official notice of the committee's decision. It is certain that relators' attorney did not receive the telephone communication as an official service of notice on him. On the contrary, he notified the chief deputy sheriff that he would not accept service of the notice unless the service was made at his office after 9 o'clock the next morning. The chief deputy sheriff acquiesced in that, and, accordingly, another deputy sheriff served the notice on the attorney at his office the next morning.

In my opinion, the only official and binding notice of its decision given by the committee and received by relators was the written notice which was served on relators' attorney and accepted by him in writing at 10:15 a. m. on October 29, 1935. It was from that time only that the two days' prescription relied on by the defendants began to run. Relators' suits were filed at 9:15 a. m. on October 31, 1935, which was within two days from the time the official notice was served on relators' attorney. In these circumstances I fail to see how the case of State ex rel. Dunshie v. Fields, 164 La. 954, 115 So. 45, 46, has any bearing on this case.

I respectfully submit that the views I have herein expressed are sound in law and equity and are wholly in keeping with the announced policy of this court to liberally construe the provisions of the election laws so as to secure to the people the right to choose their public officers. See Rousseau v. Democratic Parish Executive Committee (Champagne v. Democratic Parish Executive Committee) 183 La. 965, 165 So. 166. In refusing writs of review applied for in those cases only last Monday we said ex industria: "If a strict interpretation is placed upon the language of the Primary Election Law (Act No. 97 of 1922, as amended), and the notice of intention to become a candidate and the affidavit accompanying the notice are considered in that light, the candidate has not properly qualified. But, in the previous decisions of this Court, we have repeatedly said that, since the right of the people to choose their public officials is indirectly affected, and, this being the fundamental principle involved in all elections, a liberal construction should be placed upon the provisions of the statute. The Court of Appeal [164 So. 175] treated the case in a liberal manner, which was in accordance with the announced policy of this Court. Therefore, its judgment is correct and the writs are refused."

That declaration of the liberal policy pursued by this court in construing the election laws in the interest of the people was not qualified nor restricted. The prescriptive periods prescribed by the election statutes were not excluded from the operation of the rule of liberal construction thus announced. I see no reason why they should not be included within the rule. In all matters of private litigation, prescription is stricti juris. It is never presumed. It must be specially pleaded and the burden of establishing it is on the

pleader. The plea can never be enforced except upon the clearest showing that it is well-founded.

I concur in the rulings contained in the majority opinion on the exceptions of want of jurisdiction, misjoinder of parties, and no right or cause of action.