**KEN SHERLOCK, Plaintiff**

v.

**COLLEGE OF THE VIRGIN ISLANDS, Defendant**

Civil No. 426/1977

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 5, 1978

BRENDA J. HOLLAR, ESQ., St. Thomas, V.I., *for plaintiff*

DANIEL A. ISAACSON, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendant*

PETERSEN, *Judge*

### MEMORANDUM OPINION AND ORDER

The controversy in this case concerns the scope and applicability of a general educational requirement adopted in October of 1973 by the College of the Virgin Islands, known as the English Proficiency Examination (E.P.E.). However, the sole and specific issue now before this court on cross-motions for summary judgment is whether the E.P.E. requirement as enunciated in the 1975–76 college catalog addenda was promulgated in accordance with the procedures that govern the College of the Virgin Islands.

In October of 1973, the faculty and Board of Trustees of defendant College of the Virgin Islands (hereinafter "C.V.I." or "the College") adopted a policy requiring their degree candidates to pass an English Proficiency Examination as a requirement for graduation. The rule was published for the first time in the 1974–75 catalog which is routinely distributed to all students at registration. The regulation appeared in pertinent part in the following form

"Effective with the 1973–1974 Freshman Class, all students matriculated in the bachelor and associate in arts program must pass a written examination in the field of English Composition as a requirement for graduation." (At page 16.)

Plaintiff, Ken Sherlock, entered C.V.I. in August of 1974 as a transfer student, with 56 credits from Yuba College in California. When he registered for 1974 fall classes, he received a copy of the 1974–1976 C.V.I. catalog.

In late May of 1975, several C.V.I. students challenged the scope and applicability of the E.P.E. requirement as it appeared in the 1974–1976 catalog by filing a declaratory judgment action in District Court of the Virgin Islands. Yarwood v. College of Virgin Islands, No. 75-431 (D.V.I. June 4, 1975).

As a result of the decision in that case, the E.P.E. requirement was rephrased and its scope and applicability clarified. When the 1975–1976 C.V.I. catalog addenda appeared at the end of the summer of 1975, the rule had been amended in pertinent part, so as to delete the above quoted paragraph and to substitute in its place the following provisions:

"Because of need to improve the College's standards with regard to writing proficiency, the College has adopted an English proficiency examination, the successful completion of which is a requirement for graduation.

This requirement applies to all students who have been granted the status of matriculated student by the College with regard to the College's associate in arts and bachelor of arts degree program and who have enrolled at the College of the Virgin Islands in this status of matriculated student for the first time during or after the fall 1973 semester.

As is true at other colleges, all students at the College of the Virgin Islands must matriculate in degree programs in order to be considered candidates for degrees.

This English proficiency examination is designed to test comprehensively the student's ability to handle skills necessary for clear and effective expository writing." (At page 2.)

By his own statement[1] plaintiff became aware of the E.P.E. requirement in November of 1975. That same month

---

[1] Plaintiff's Answers to Defendant's first set of Interrogatories dated September 12, 1977.

he took the E.P.E. without success. On January 20, 1976, plaintiff received a "warning letter" from the College by registered mail, return receipt requested, which indicated that he could not graduate unless he met the E.P.E. requirement.

Plaintiff thereupon registered for a remedial English course entitled Essay Writing Review, offered by the College, as preparation for the E.P.E. He took the course during the spring of 1976 and attempted unsuccessfully to pass the examination for the second and third time on January 29, 1976 and on May 19, 1976.

At the close of the summer session 1976, Sherlock had fulfilled all the requirements for his Bachelor of Arts degree with the exception of the E.P.E. He repeated the examination again in September 1976, January 1977, and May 1977, failing each time. In June, 1977, after six unsuccessful attempts at passing the examination, plaintiff filed this action for permanent mandatory injunction and declaratory judgment claiming, in essence, that the rule as originally published did not apply to him.

The parties proceeded through discovery to a pretrial conference on November 16, 1977. At that time both sides agreed that all material evidentiary facts were before the court and that the case was ripe for summary judgment. Immediately thereafter, plaintiff amended the complaint, abandoning his original claim and reflecting the fact, as stipulated to at pretrial, that the sole issue remaining for consideration by this court was whether the E.P.E. requirement as enunciated in the 1975–1976 catalog addenda was promulgated in accordance with the procedures that govern C.V.I.

Plaintiff initially took the position that because of the wording of the rule as originally written, in particular, because of the phrase "effective with the 1973–1974 Freshman Class," the rule was not intended to apply to him.

Essentially, that was the argument successfully advanced in Yarwood. The plaintiffs in that case, like Sherlock, were all students who had completed more than 24 credit hours of college work[2] at the start of the 1973–74 academic year. Accordingly, the court determined that the plaintiffs in Yarwood did not come within the scope of the rule under its "most likely interpretation."

It is important to note here that throughout Yarwood, the administration of C.V.I. argued that the rule was intended to require *all students* enrolling for the first time in a degree program at the college after the start of the 1973–74 academic year to pass the E.P.E., and once Yarwood was decided, the College quickly rephrased the rule to clearly and unambiguously express that intent. The court in Yarwood strictly supported the college's right to make such a change when it held:

". . . C.V.I. can promulgate and apply such a rule to all those now enrolled if they are given a reasonable opportunity to prepare themselves for such a test and to take it prior to graduation. C.V.I. can also promulgate and apply such a requirement to those matriculating as of a certain date. The only limitation the opinion and judgment places on C.V.I. is that the rule be promulgated in accordance with the procedures that govern C.V.I., and that the rule have sufficient clarity that it can reasonably be understood by those to whom it is to apply."

Thus, it was clear after Yarwood that the College, in its discretion, could reform or rephrase its E.P.E. requirement[3] subject, however, to the specific limitations outlined in Yarwood. The College did change the requirement

---

[2] At page 8 of the 1974–76 C.V.I. Catalog, the classification scheme used at C.V.I. is explained: "A student must have completed 24 semester credits of college level work to be classified as a sophomore, 60 as a junior, and 90 as a senior."

[3] Notice to students of the reservation of this right appears at page iii of the C.V.I. 1974–1976 catalog wherein it is stated that:

"The College reserves the right to change academic requirements, calendar, fees, and regulations without notice after the publication of this bulletin."

and Sherlock's original claim was necessarily left by the wayside.

Accordingly, at the close of the pretrial conference, plaintiff amended his complaint and stated a new issue, which, not surprisingly, was framed in terms of one of the specific limitations imposed upon C.V.I.'s academic rule-making freedom, by the Yarwood decision.

Preliminarily, it is essential to consider whether the rule as written has sufficient clarity that it can reasonably be understood by those to whom it is to apply. As to the 1975–76 amended rule, this court finds that it has. It can be concluded that plaintiff Sherlock having taken the examination on six different occasions, understood the rule and implications.

It is also necessary to consider whether C.V.I., in enforcing the E.P.E. requirement against Sherlock, gave him a reasonable opportunity to prepare for and to take the examination prior to his scheduled graduation. Plaintiff became aware of the examination requirement in November of 1975, ten months before he had completed all other requirements for graduation. During this period he completed a remedial English course offered by the College and actually sat for the examination on three different occasions. The court must conclude, therefore, that Sherlock was afforded an adequate opportunity to prepare for and to take the examination prior to the date of his expected graduation.

Our final consideration under Yarwood centers around whether the E.P.E. requirement as enunciated in the 1975–1976 catalog addenda was promulgated in accordance with the procedures that govern C.V.I.

Defendant C.V.I. claims that to promulgate simply means "to publish." The College further contends that the E.P.E. rule as it appeared in the 1975–1976 catalog addenda was properly published and that all students including Sherlock

whose rights were immediately threatened under the rule were properly and individually notified of their situation. Defendant's position is well supported in case law. The word "promulgate" as defined therein means "to publish," United States v. Stoehr, 100 F.Supp. 143 (M.D. Pa. 1951) at 164, or to make known as obligatory or important, Brown v. Democratic Parish Committee, 165 So. 167 (La. 1935). "Promulgation" usually connotes an official public declaration, Kelly v. Murphy, 377 P.2d 177 (Nev. 1963), for the purpose of giving notice. Brown, supra. Promulgate is not synonymous with the word "make." Price v. Supreme Home, 285 S.W. 310 (Tex. App. 1926).

■ To promulgate a rule in accordance with the procedures that govern C.V.I. does not mean simply to write or vote upon or otherwise "to make" the rule in accordance with designated procedures, but rather, it imposes a duty on C.V.I. to insure that proper and adequate notice of the rule, once made, is accomplished. It is this distinction which the plaintiff herein has failed to perceive.

Plaintiff contends that no C.V.I. faculty or Board of Trustees meetings were held between the time of the Yarwood decision and the appearance of the new version of the rule in the 1975–1976 addenda, and that absent such meetings, no procedure could have properly been implemented. However, the issue specifically framed herein is whether the 1975–1976 rule was properly announced and noticed, not whether it was properly made. Plaintiff has failed to establish by the evidence, and this court is not at liberty to infer, that the actual and successful publication or "promulgation" of a properly approved academic regulation is dependent upon formal faculty or board action. Without this causal link, plaintiff's argument is untenable. The evidence in this case strongly suggests and the court so finds that both notification and clarification of the College's existing rules and regulations are properly within the prov-

ince of the administration of C.V.I. and the Dean of the College.[4]

Thus, the court concludes that it was well within the province of the College to interpret and rephrase the already existing, properly approved E.P.E. requirement. It finds nothing of record in this case to suggest that revising the rule to the form enunciated in the 1975–1976 catalog addenda constituted anything other than an internal administrative clarification on the part of the College.

The court concludes that the E.P.E. requirement as modified was clearly enunciated and subject to a single interpretation as to its scope and applicability. Plaintiff Sherlock could reasonably have been expected to understand the rule to apply to him. The court finds that under the revision the plaintiff herein was afforded an opportunity to prepare for and to take the examination and the court further finds that Sherlock was properly and adequately notified by the College of the effect of the rule in question upon him. The court concludes that the E.P.E. requirement as it appeared in the 1975–1976 College catalog addenda was promulgated in accordance with the rules that govern C.V.I. and more importantly, that the amended rule in no way violated or impinged upon plaintiff's due process rights.

■ Moreover, where basic constitutional values of this proportion are not directly and sharply implicated, the Supreme Court of the United States has held that "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems." Epperson v. Arkansas, 393 U.S. 97, 103, 89 S.Ct. 266 at 270 (1968). When questions of academic standards and regula-

---

[4] A memorandum dated August 15, 1975, from the Dean of the College "To All Students," provided *actual notice* to students of the new language in the 1975–1976 catalog addenda regarding the E.P.E., and informed students "that they may seek clarification of the policies, rules and regulations of the College by applying for such clarification *to the Dean of the College*." At fall 1975 registration, plaintiff Sherlock, or his agent registering in his behalf, received a copy of this memorandum.

tions, such as the one in the case at bar, arise within the context of the administration of college and university affairs, it is well recognized that the wisest course for courts to pursue is one of judicial restraint and noninterference. Keys v. Sawyer, 353 F.Supp. 936 (S.D. Tex. 1973); Connally v. University of Vermont, 244 F.Supp. 156 (D. Vt. 1965).

In Yarwood, the court believed that the scope of its review of C.V.I. actions was limited to due process considerations. In making that determination, the court stated:

"I must give wide deference to the decisions of the administration and faculty of C.V.I. lest there be an unwarranted interference by the Court in academic affairs."

This court finds itself constrained by the same limitations, and consequently will not interfere in the internal academic and administrative affairs of the College without good and sufficient cause.

Accordingly, in the absence of any violation of plaintiff's due process rights, this court will look no further into the internal administrative activity of the College of the Virgin Islands.

## ORDER

Upon consideration of the pleadings, answers to interrogatories, admissions and prior controlling case law, plaintiff's motion for summary judgment is hereby denied and defendant's motion for summary judgment of dismissal of plaintiff's complaint in favor of defendant is hereby granted.