81 So.2d 761

**SHELL OIL COMPANY**

v.

**Moreland H. HOGAN, John LaNasa and Marion A. LaNasa.**

Nos. 41969, 41981.

May 23, 1955.

Rehearing Denied June 30, 1955.

Albert B. Koorie, George C. Schoenberger, Jr., Ernest M. Sutter, New Orleans, for appellant.

Henican, James & Cleveland, John Pat. Little, Roland J. St. Martin, New Orleans, for appellees.

HAWTHORNE, Justice.

Shell Oil Company instituted this suit against Moreland H. Hogan, John LaNasa, and Marion A. LaNasa for specific performance of a contract to sell a parcel of land in New Orleans. An exception of no right or cause of action was filed by John and Marion A. LaNasa and also by Moreland H. Hogan. The district court rendered separate judgments maintaining these exceptions, the plaintiff appealed to this court from each judgment, and the appeals have been consolidated in this court.

According to the facts as disclosed by the petition and the document annexed to it, Shell Oil Company on February 1, 1954, entered into an agreement with Moreland H. Hogan in which Shell agreed to purchase and Hogan agreed to sell, for a consideration of $82,500, a parcel of land approximately 150 feet by 150 feet on the corner of Gentilly Boulevard and Press Drive in Square 37 of the Third District of the City of New Orleans. According to the purchase agreement title was to be passed at the office of a notary to be selected by Shell on March 4, 1954, or on such other date as might be mutually agreed upon by the parties.[1] The contract to sell and purchase was filed for record in the conveyance records of Orleans Parish on February 10, 1954.

At the time this purchase agreement was entered into, Hogan was the owner of Squares 38 and 39 as well as Square 37, and in the agreement he obligated himself to place certain building restrictions[2] on the property in these three squares with the exception of the tract which Shell had agreed to purchase. According to the purchase agreement, "In order to make said conditions effective, Seller agrees to execute and record an instrument containing said protective covenants prior to the sale by Seller of any portion of the property covered by said restrictions, and on or before the date of closing of title to Shell referred to hereinabove, in such form as to thereafter constitute said restrictions as covenants running with the land, binding on all parties, their heirs, executors and assigns, or any other future owners of said land".

On February 1, 1954, Hogan sold Square 39 to John Schwegmann, Jr., and on February 19 he sold a portion of Square 38 to the Louisiana Bank & Trust Company. Hogan made both these sales without executing or recording any instrument containing the restrictive covenants, although he had expressly obligated himself in the contract with Shell to execute and record such an instrument before the sale of any land in the squares designated in the contract with Shell.

1. As there is no allegation anywhere in the record that any other date was ever mutually agreed on by the parties, March 4, 1954, remains the crucial date in this case.

2. These restrictions among other things prohibited the use of the land for gasoline filling or automobile service stations.

March 4, 1954, came and went without Shell's making any attempt to appoint a notary and take title to the tract on the corner of Gentilly Boulevard and Press Drive.

On March 16, 12 days after the date fixed in the contract for passing title to Shell, Hogan sold all of Square 37 to the other defendants in this case, John and Marion A. LaNasa, and this sale to the LaNasas included the property which Hogan in the purchase agreement had obligated himself to sell to Shell. All of these sales were recorded in the conveyance records of Orleans Parish.

On April 15, 1954, approximately six weeks after the date set in the contract for the passing of title, Shell instituted the instant suit against Hogan and the LaNasas seeking specific performance. In its petition Shell alleged that it was willing and able to accept title to the property, and prayed that Hogan be required by judgment to execute the act of sale, and that the sale from Hogan to the LaNasas be declared null and void insofar as it covered the land described in the purchase agreement. In its petition Shell made the following allegation:

"Defendant Hogan is not now able to perform in accordance with all the obligations of the agreement of February 1, 1954, having sold certain portions of the property without restrictions; but petitioner is entitled to specific performance insofar as defendant Hogan is yet able to perform and desires specific performance to that extent and defendant Hogan should be ordered by judgment of this Honorable Court to transfer the above described property to petitioner and to incorporate in said act of sale the restrictions provided for in the agreement of February 1, 1954, insofar as such restrictions would affect or apply to property presently owned by defendant Hogan in Square 38."

Although the purchase agreement expressly provided that title was to be passed at the office of a notary selected by Shell on March 4, 1954, Shell permitted this date to pass without taking any action. Notwithstanding this fact, Shell is now asking the court to grant specific performance of the contract. In defense of its failure to perform, Shell argues that it was not required to fulfill its part of the agreement on or before March 4 because Hogan had already actively breached their contract by his conveyances to Schwegmann and the bank prior to the execution and recordation of an instrument containing the restrictive covenants. In other words, Shell contends that Hogan's active breach of the purchase agreement relieved Shell of the necessity of putting Hogan in default by a timely offer to perform.

We think Shell is correct in its position that these sales were an active breach of the contract by Hogan, for under the provisions of Article 1931 of the Civil Code a contract may be violated actively by doing something inconsistent with the

obligation it had proposed. We also concede that when this active breach occurred Shell had no obligation under the provisions of Article 1932 to put Hogan in default before filing suit. However, the provisions of the contract which were breached by Hogan were for the benefit of Shell, and consequently Shell could elect not to take advantage of the breach. We think this is exactly what Shell did in the instant case. In other words, although the contract was breached by Hogan, Shell has obviously waived these breaches by its allegation that it is willing to take title and by seeking specific performance insofar as Hogan is yet able to perform.

Since Shell has waived the breaches of the contract, Hogan cannot now be considered as being in default. Shell's waiver of the breaches had the same effect as if the restrictive provisions with reference to the adjacent property had never been in the contract, and Shell by seeking specific performance has elected to consider the contract for the sale of the property unbroken. Consequently on March 4, the date fixed in the contract for passing title, Shell should have notified Hogan of its selection of a notary before whom the act of sale was to be passed and that it was ready and willing to accept title. In other words, it should have offered to perform that which on its part was to be performed under the provisions of the contract. Art. 1913, La. Civil Code.

 Shell, having permitted March 4 to pass without any action on its part, cannot now successfully demand specific performance of the contract for the sale of the property. Lamar v. Young, 211 La. 837, 30 So.2d 853; DiCristina v. Weiser, 215 La. 1115, 42 So.2d 868; Harrell v. Stumberg, 220 La. 811, 57 So.2d 692.

The judgments appealed from are affirmed at appellant's costs.