89 So.2d 45

**Emery J. FONTENOT**

v.

**Nolan J. HUGUET.**

No. 42492.

June 11, 1956.

DeBlieux & Cobb, Baton Rouge, for plaintiff-appellant.

Gremillion & Lear, Baton Rouge, for defendant-appellee.

HAWTHORNE, Justice.

Emery J. Fontenot instituted this suit for performance of an alleged contract to sell certain real estate and movable property in the City of Baton Rouge [1] and for damages allegedly sustained because of de-

1. Among the improvements situated on the property there was an automobile filling or service station.

fendant's breach of the contract. The defendant, Nolan J. Huguet, filed an exception of no cause or right of action, which was sustained. However, upon the filing of a supplemental petition the trial court granted plaintiff's application for a rehearing, and at that time referred the exception to the merits. After trial on the merits there was judgment rejecting plaintiff's demands, and he has appealed.

The document which forms the basis of plaintiff's suit is as follows:

"Southeastern Business Brokers
P. O. Box 339
Baton Rouge, Louisiana
4/10/54                        Attention:   Mr. Barre
Dear Mr. Barre:
    I herewith list with Southeastern Business Brokers, 3170 Florida Street, Baton Rouge, Louisiana, and will accept proposition herein on X

X    my            Property            known as _____
        Huguet's Filling Station              located _____
        Plank Road & Hollywood (149.5′ × 128′).

                                       acceptance
    It is agreed and understood that this ~~listing~~ will be for a consideration of $37,500.00            for Same    .
$10,000.00 Down & 189.92 Per Mo. for 15 Yrs            ~~plus cost~~
27,500 Bal @ 3%
                            Included in Price
~~of~~ inventories at the time of transfer./    Approximate amount of inventories $1000.00 approx            .
            hereby agree to accept above price for
    I ~~herewith list this going business with you for~~ a period of    120    DAYS to commence    4/10/54
and I agree to pay the normal    5%    per cent commission on the sale including inventory.
Except—
Big wrecker & elec. ~~drill~~ Welder.            Yours very truly,
which is reserved.
Lease in affect recognized but        (s/d)   N. J. Huguet
money to be prorated.

Wit: J. Allphin—
4/10/54   Accepted with Inventory list attached, and agree to buy. Deed to be passed ~~within~~ as soon as title can be verified.   I herewith make deposit of 500.00, not considered earnest money, and to be considered as part of down payment.
        This offer is good for 30 days.
                            (s/d)   Emery J. Fontenot"

This document is apparently a form letter in which certain words have been interlined in longhand and other words written above these interlineations. The blanks also have been filled in in longhand, and all the writing is that of the agent Barre.

Earlier in the year 1954 defendant, Nolan J. Huguet, had listed the property in question for sale with Jules Barre, a real estate agent doing business as Southeastern Business Brokers, for the price of $42,000. After the listing of this property, plaintiff made numerous offers to the defendant through Barre for the purchase of the property. These offers were for $30,000, $32,500, and $35,000, but all had been refused. A short time before the date of the above instrument plaintiff offered defendant $37,000 for the property, $12,000 to be paid in cash and the balance in equal monthly installments over a period of 15 years. This offer was also refused by the defendant.

On Saturday, April 10, the real estate agent Barre together with an agent named Allphin went to defendant's home. Defendant testified that at that time he informed the two real estate agents that he would accept $37,500 net to him for the property, and that the notes for the credit balance must be at such a rate of interest that he could sell them without a discount or for their face value. After a lengthy discussion defendant at that time affixed his signature to the instrument. Immediately after obtaining defendant's signature to

this instrument the real estate agents went to plaintiff at his home, and a meeting was arranged for all four parties at defendant's filling station for the purpose of making the inventory of the movable property there. The parties met at the filling station and made an inventory that same afternoon, and after the inventory had been completed, Barre, the real estate agent, wrote upon the bottom of the contract the acceptance which plaintiff signed, and plaintiff at that time delivered to Barre his check for the $500 deposit.

The same afternoon, soon after the execution of the instrument, defendant began to have serious doubt whether he could sell the 3 per cent notes at their face value. He at once made an effort to reach his banker, but was unable to do so. He then called Barre and told him to hold up the deal. Early Monday morning he went to his bank and learned that he could not sell the 3 per cent notes at their face value. A short time afterwards defendant informed plaintiff through his attorney that he was willing to accept $37,500 net to him for the property, but that he would not accept notes bearing 3 per cent interest for the credit portion of the sale price. This suit for specific performance followed.

After hearing all the witnesses testify, the trial judge concluded that the price and terms set forth in the instrument were agreed upon by the real estate agents and the plaintiff Fontenot before the former went to defendant's home on Saturday

morning, April 10; that these agents and plaintiff must have known full well that defendant would not agree to the terms set forth in the instrument unless he could be assured that a bank would buy the notes for their face value so that he would receive $37,500 net for the property; that before defendant signed the instrument both of these agents assured him that he could sell the notes in question to a bank without any discount; that upon such representation he signed the document; that the plaintiff and these real estate agents, who were astute business men, must have known full well that no bank would buy the 3 per cent notes at their face value; that in making such misrepresentation to the defendant the real estate agents were acting for plaintiff.

Under these facts the trial judge found "that defendant never intended to enter into any agreement for the sale of his property that would not enable him to negotiate for face value any notes given in connection therewith, or, if he agreed to accept 3 per cent notes it was under the mistaken belief that they could be negotiated at face value, which mistaken belief on defendant's part arose because of misrepresentation by Barre and Allphin, and that in either event the evidence establishes the invalidity of the contract". The trial judge then concluded that plaintiff was not entitled to the relief sought, and that the contract was invalid under the provisions of Article 1847 of the Civil Code.

We cannot say that the trial judge erred in his finding of fact. However, we do not think it is necessary for us even to consider the evidence adduced at the trial, for we are of the view that the document on its face does not entitle plaintiff to the relief which he seeks. The trial judge had serious doubt whether the document on its face constituted an offer and acceptance which could form the basis of a decree for specific performance, but in view of the conclusion that he reached on the facts he stated that it was not necessary for him to consider that question.

To us it is very doubtful whether that part of the instrument appearing over defendant's signature constituted an offer by the defendant to sell his property to the plaintiff or any other person, rather than a mere listing of the property for sale with the real estate agent, particularly in view of the words in this document addressed to Barre: "I herewith list with Southeastern Business Brokers, 3170 Florida Street, Baton Rouge, Louisiana, and will accept proposition herein on my property * * *." However, considering it in the light most favorable to plaintiff, that is, that it did constitute an offer to sell the property, we do not think that the offer was ever unconditionally accepted by the plaintiff, for over his signature we find these words: " * * This offer is good for 30 days." We cannot delete these words from his so called acceptance, and if they mean what they say, defendant had the right either to convey

or to refuse to convey the property for a period of 30 days from April 10, 1954. There is no question that defendant, availing himself of this right, a few days after the date of the instrument itself informed plaintiff through his attorney that he would not go through with the proposition.

 Plaintiff argues that this sentence is nothing more than an incidental matter which is a hope or suggestion concerning the early completion of the transfer of title. We think that the sentence is a great deal more than a hope or suggestion concerning the completion of the transfer of the title, for in Lousiana time is of the essence in a contract to sell which specifies a period in which title must be passed. See Shell Oil Co. v. Hogan, 228 La. 37, 81 So.2d 761, and authorities there cited. If we give it an interpretation most favorable to plaintiff, that is, that title is to be passed in 30 days, then it was not an acceptance of the offer as made by defendant, but was a condition or limitation contained in plaintiff's acceptance which gave to defendant the right to withdraw from his offer. Under the law it is well settled that an offer must be accepted as made in order to constitute a contract; otherwise there is no contract. Art. 1805 La.Civ.Code; Blythe v. Hall, 169 La. 1120, 126 So. 679; see also Barrow v. Ker, 10 La.Ann. 120; Bethel v. Hawkins, 21 La.Ann. 620.

Plaintiff cites and relies on the case of Jones & Co. v. Sanford, 163 La. 799, 112

So. 726, and cases from other jurisdictions. These cases are inapposite and not controlling here.

The judgment appealed from is affirmed at appellant's costs.