SIMON, Justice.
 

 This is a suit by plaintiff, the Housing Authority of the Town of Lake Arthur, Louisiana
 
 [1]
 
 , against defendant, T. Miller & Sons, Contractor, seeking the recovery of $8,875.41 plus 10% attorney’s fees, for damages allegedly sustained by plaintiff arising from defendant contractor’s refusal to comply with its bid and to execute a public construction contract for which defendant was the low bidder in response to plaintiff’s invitation for bids.
 

 The facts, as revealed by the record, show that in 1952, in order to construct the housing project and in order to be guaranteed the necessary funds therefor, plaintiff, in cooperation with the Government of the United States, in due and legal form advertised or invited bids on this project.
 

 After a thorough examination of all conditions and specifications defendant partnership submitted a bid in the amount of $223,777.77, and simultaneously supplemented its bid by a notation on the envelope under the signature of David B. Miller reading:
 

 “Deduct from our base bid the sum of $11,000.00. T. Miller & Sons by David Miller.”
 

 Thus the final net bid submitted by defendant amounted to $212,777.77.
 

 Conformably with the terms of the invitation and advertisement on April 22, 1952, at 2:00 o’clock P.M. plaintiff received, opened and read aloud defendant’s bid, along with others. In accordance with the advertisement, as well as the invitation to bid and the specifications set out in the project, the local Housing Authority had thirty days subsequent to the opening of the bids within which to accept or reject any and all that had been submitted. The fact that this right of thirty days within which to accept or reject was well within the knowledge of defendant and that this privilege was part of the terms and con
 
 *971
 
 ditions to the proposed contract is made evident by the provisions of the bid
 
 [2]
 
 submitted by the defendant.
 

 It also appears that the invitation for bids expressly stipulated the following pertinent provision:
 

 “No bid shall be withdrawn for a period of thirty (30) days subsequent to the. opening of bids without the consent of the Housing Authority of the Town of Lake Arthur.”
 

 The record further discloses that after the opening and reading of all submitted bids, and it appearing that the defendant had submitted the lowest, a resolution was proposed and unanimously adopted by the local Housing Authority authorizing its director to accept defendant’s bid and to proceed with the execution of the contract, but subject to the following pertinent condition, viz.:
 

 “Section 4. That the foregoing action and the contract to be executed is expressly declared to be subject to the approval of the Public Housing Administration.”
 

 It further appears that by letter dated May 12, 1952, C. J. Stenzel, Director, Fort Worth Field Office of the United States Public Housing Administration, well within the thirty-day period, notified the local director that plaintiff had full power and authority to execute the construction contract with the defendant in accordance with the latter’s bid, the construction to be limited to the parcels to which plaintiff had title. It also appears that this letter constituted an unqualified approval of defendant’s proposed contract. For reasons not disclosed by the record, the local director failed to notify the defendant immediately of plaintiff’s acceptance of the-former’s bid, other than is hereafter shown. However, it is shown by the testimony of the local director that prior to May 22, 1952, he made several unsuccessful telephone attempts to so notify the defendant.
 

 It is also shown that on May 22, 1952, shortly after 2:00 P.M. defendant wired the plaintiff that it was withdrawing its bid which had been submitted at 2:00 o’clock P.M. on April 22, 1952. Knowledge of the contents of this telegram was first obtained in a telephone conversation had between
 
 *973
 
 the local director and the defendant and before its actual receipt later that day. As a consequence of this ’phone conversation, the local director wired the defendant notifying it of the local Housing Authority’s acceptance of its bid, which telegram was received at its offices the same afternoon at 3:35 P.M. on May 22, 1952.
 

 Upon defendant’s refusal to execute the contract, the Housing Authority accepted the next lowest bid, which was submitted by the Lewis Lumber Company of Crowley, Louisiana, in the sum of $221,653.18. The Lewis Lumber Company constructed the housing units and was paid in full for its services in accordance with the terms of its bid. Whereupon the Housing Authority filed suit against defendant and its insurer and bondsmen to recover the difference between the bid of T. Miller & Sons and that of Lewis Lumber Company, namely $8,875.41 plus 10% attorney’s fees, the latter under the provisions of LSA-R.S. 22:658
 
 [3]
 
 .
 

 The trial judge rendered judgment in favor of defendant, assigning as his reasons the following:
 

 “The Court is of the opinion that the inserting of Section 4 of the contract by plaintiff changed the terms of the bid of defendant partnership in that it made it conditional upon its approval by a third party and was, therefore, unenforceable. See Fontenot v. Huguet [230 La. 483], 89 So.2d 45.
 

 “However, should the above conclusion be wrong, the Court is still of the opinion that plaintiff cannot recover for the reason that the defendant partnership withdrew its offer timely and before an acceptance by plaintiff. The bids were opened at 2:00 P.M. on April 22, 1952. Shortly after 2:00 P.M. on May 22, 1952, defendant partnership withdrew its bid prior to acceptance by plaintiff. The 30 day period had expired.”
 

 Plaintiff perfected its appeal.
 

 Two principal defenses are here involved. All other defenses have been waived by stipulation or considered abandoned in oral argument. The first defense is that there was no acceptance of the contractor’s bid
 
 *975
 
 as the alleged acceptance was qualified and conditioned upon the approval of the Public I-Iousing Authority, a third party. The second defense, urged in the alternative, is that defendant’s bid was legally withdrawn after the expiration of thirty days and prior to notification of acceptance of the bid or award of the contract.
 

 The first question presented by this appeal is whether the acceptance of defendant’s bid by the Housing- Authority was conditional and unenforceable as found by the trial judge.
 

 LSA-R.S. 38:2211-2217 prescribe the manner in which contracts may be let for construction by any public corporation or political subdivision. Section 2212 thereof provides for the designation of the time and place that the bids will be opened and the contract let, and it further provides that the governing authority “shall at the place and time specified open the bids and let the contract. The governing authority may reject any and all bids.” Hence, defendant contends that on the day the bids were opened it was mandatory that the Housing Authority, under the provisions of said Section, unconditionally accept the lowest bid or reject all the bids; that by including in the resolution of acceptance the condition that the acceptance was to be subject to the approval of the Public Housing Administration, there was neither an unqualified acceptance of the lowest bid nor a rejection of all the bids as required by law; and that any action taken by the Public Housing Administration, or. anyone else, not directly a party to the advertisement and reception of bids, cannot be used as a substitute for the specific mandate statutorily prescribed.
 

 It is manifest that under the plain and unmistakable terms and conditions of the advertisement and invitation for bids, plaintiff had the unquestioned right of either accepting or rejecting defendant’s bid within the period of thirty days from the date (April 22, 1952) of the opening of the bids. The defendant expressly recognized and bound itself accordingly in submitting its written bid as hereinabove referred to. It is common knowledge that a reasonable delay, in this instance a thirty-day period, is usually included in all bidding for public construction or works preceding the formal acceptance or award of the contract. This delay thus affords the parties an opportunity to investigate, among others, the moral attending risks, an adequate opportunity to investigate the ability, financial, workmanship or otherwise, of the bidder or offerer to perform the contract in an acceptable manner, not excluding the preparation of the formal contract. It must be borne in mind
 
 *977
 
 that this public work was being done with financial aid from the Public Housing Administration, and needless to say, the Federal Government, through its Housing Agency, would necessarily insist that the submitted bid, with all heretofore mentioned factors, .be first approved by it during the thirty-day period prescribed.
 

 There can be no doubt that defendant was cognizant of the fact that the proposed contract was being financed through local and Federal public funds and that the formal approval of the proposed contract by both agencies was indispensable. This approval by the federal agency is fully established by its letter of May 12, 1952, well within the thirty-day period. Conceding the proviso of Section 4, supra, subjecting the execution of the contract to the approval thereof by the federal agency, to be a suspensive condition, it follows that once the proposed contract was approved, as it is shown to be, the condition became fulfilled, and may be deemed eliminated, thus affording plaintiff the right to accept or reject defendant’s bid so long that affirmative action in either instance was exercised and accomplished within the thirty-day period mutually recognized.
 

 Our Codal Articles wisely provide that conditional obligations are such as are made to depend on an uncertain event, and is suspensive when the obligation is not to take effect until the happening of the event.
 
 [4]
 
 It is further provided that when an obligation has been contracted on condition that an event shall happen within a limited time, when the time has expired without the event having taken place, the condition is considered as broken.
 
 [5]
 
 Manifestly, by analogy and equal reasoning, when the condition is one performed within the limited time the condition becomes fulfilled and is binding and enforceable.
 

 The case of Fontenot v. Huguet, 230 La. 483, 89 So.2d 45, relied on is clearly not apposite under the facts presented in the instant case.
 

 We now consider the second defense, whether the acceptance of plaintiff was timely. Defendant contended, and was upheld by the district court, that the thirty-day period during which plaintiff could accept or reject its bid began to run at 2:00 o’clock
 
 *979
 
 P.M. on April 22, the day the bids were received and opened, and ended at 2:00 o’clock P.M. on May 22. If we accept this view, plaintiff’s acceptance by telegram to the defendant at about 3:30 o’clock P.M. on May 22 came too late as defendant had already withdrawn its bid at 2:02 o’clock P.M. that same afternoon. While counsel for defendant has devoted a large portion of the argument in his brief to this proposition, the authorities relied on are inapposite from a legal and factual standpoint. It cites Ratcliff v. Louisiana Industrial Life Ins. Co., 185 La. 557, 169 So. 572; and Richardson v. American Nat. Ins. Co., 18 La.App. 468, 137 So. 370, both involving insurance policy claims in which the contract provided that the policy was to be effective on the date on which it was written. Naturally, the date on which the policy was written, by the very provisions of the contract itself, would be counted in determining its enforceable term. Counsel for defendant also cites election contest cases, namely Smith v. Fitch, La.App., 194 So. 435, and Brown v. Democratic Parish Committee, 183 La. 967, 165 So. 167, in which the courts held that the delay for filing suit begins at the time of the promulgation of the election, not the day after. Clearly these cases are inapplicable and not controlling as to contracts, which are peculiarly governed by Articles 2057
 

 [6]
 

 and 2058
 
 [7]
 
 of the LSA-Civil Code.
 

 In the case at bar it is obvious to us that the provision that “If written notice of the acceptance of this bid * * * within thirty days after the opening thereof, or at any time thereafter before this bid has been withdrawn, the undersigned agrees to execute and deliver a contract in the prescribed form and furnish the required bond within ten days after the contract is presented to him for signature,” shows that the parties clearly contemplated that both periods of time alluded to therein meant, and was intended to mean thirty full days, or in the latter instance ten full days, and not a fraction of a day. It is equally clear to us that the fact that a meeting called for the hour of 2:00 o’clock P.M., after which hour the bids would be opened, read and publicly announced, was not intended as the specific time in which the thirty-day period would begin to run, this hour being one to satisfy the convenience of all interested
 
 *981
 
 parties and at which time the meeting would ■ be called to order and thereafter proceed with the orderly process of business. We cannot say that because the meeting was called for 2:00 P.M. necessarily means the actual opening of the bids at that exact. hour.
 

 We think, and we are supported in that view by the great weight of modern authority, that in the construction of contracts and statutes, when an act is to be performed within a specified period from or after a day named, the rule is to exclude the first day and to include the last day of the specified period.
 

 In the case here the word “after” is used. Generally, when computing time “after” an act, the day on which the event took place is excluded. American Jurisprudence, Vol. 52, Sections 17 and 27, pages 342 and 352.
 

 Our Code of Practice, Articles 180 and 318, in the computation of time for delays in filing pleadings, do not consider fractions of a day.
 

 Hence, the Housing Authority had thirty full days subsequent to the opening of the bids to accept or reject defendant’s low bid. In effect, it had until sunset of May 22, 1952, and its telegraphed acceptance of the proposed contract between 2:00 and 3 :00 o’clock P.M. on that day, which defendant admits was received by it, constituted a legal and enforceable acceptance of the contract within the thirty-day period to which defendant bound itself.
 

 In oral argument before this Court, both parties agreed that if plaintiff is entitled to recover in this suit, the amount of $8,875.41 sought in its petition to the district court is correct.
 

 Plaintiff also urges that it is entitled to 10% attorney’s fees under the provisions of LSA-R.S. 22:658
 
 [8]
 
 because of the arbitrary and capricious refusal of defendant’s insurer to pay plaintiff’s claim. This contention, in our opinion, has little merit as we are convinced that the defense in this case is a serious one and has been made with good and sufficient cause. The two legal questions presented for our decision were close and difficult of determination.
 

 For the foregoing reasons, the judgment of the district court is reversed and set aside and it is now ordered that there be judgment in favor of plaintiff in the amount of $8,875.41, with interest from date of judicial demand until paid; all costs to be paid by defendant.
 

 [1]
 

 . A duly established public organization created and existing under the provisions of
 
 LSA-R.S.
 
 40:381 et seq., and domiciled in Jefferson Davis Parish, Louisiana.
 

 [2]
 

 . “1. The undersigned (T. Miller & Sons) having familiarized themselves * * * with the specifications including invitation for bids * * *.
 

 “2. In submitting this bid, it is understood that the right is reserved by the Housing Authority of the Town of Lake Arthur to reject any and/or all bids. If written notice of the acceptance of this bid is mailed, telegraphed or delivered to the undersigned (defendant)
 
 within thirty days after the opening thereof,
 
 or at any time thereafter before this bid has been withdrawn, the undersigned agrees to execute and deliver a contract in the prescribed form and furnish the required bond within 10 days after the contract is presented to him for signature.” (Italics ours.)
 

 [3]
 

 . “All 'insurers issuing any type of contract otlier than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised. Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or' without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between
 
 *975
 
 the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. * * * ”
 

 [4]
 

 . LSA-C.C. Article 2021: “Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition.”
 

 [5]
 

 . LSA-C.C. Article 2038: “When an obligation bas been contracted on condition that an event shall happen within a limited time, the condition is considered as broken, when the time has expired without the event having taken place. If there be no time fixed, the condition may always be performed, and it is not considered as broken, until it is become certain that the event will not happen.”
 

 [6]
 

 . “Where a term is given or limited for the performance of an obligation, the obligor has until sunset of the last day limited for its perfox'manee, to comply with his obligation, unless the object of the contract can not be done after certain hours of that day.”
 

 [7]
 

 . “When the contract is to do the act in a certain number of days, or in a certain number of days after the date of the contract, the day of contract is not included in the number of days to be counted, and the obligor has until sunset of the last day of the number enumerated for the performance of his contract, with the exception contained in the last preceding article.”
 

 [8]
 

 . The cited statute provides for a maximum of 12% as attorney’s fees, however plaintiff lias confined tlie demand for attorney’s fees to tlie amount of 10%.