LOTTINGER, Judge.
This is a suit for a realtor’s commission filed by Parker Mead, Inc., as petitioner, against James P. Cutrer, Jr., as defendant. The Lower Court rendered judgment in favor of defendant dismissing petitioner’s suit, and petitioner has taken this appeal.
The facts show that the defendant, James P. Cutrer, Jr., signed a purchase agreement with Jordan Realty and Construction Company for the purchase of a new home. The agreement was handled by petitioner as the real estate agent. The agreement called for financing with 10% down. It was later learned that 10% financing was not available, and so petitioner had defendant sign a new agreement, which was back-dated to October 2, 1967, the date of the original agreement. The new agreement provided for 20% cash and the balance to be financed with a conventional loan at the best rate of interest obtainable. Both agreements called for the act of sale to be passed before purchaser’s notary on or before October 15, 1967.
The facts show that Joe Smither, the real estate salesman for petitioner, had been to the Louisiana National Bank in Baton Rouge in order to make necessary arrangements for the loan to Mr. Cutrer. It was he who found out that the bank required a 20% down payment instead of a 10% down payment and this was the reason that the second contract was entered into between the parties. On or about October 9, 1967, Mr. Smither personally escorted Mr. Cutrer to the bank to make application for a loan and Mr. Lee Griffin, the bank official testified that he took this application on this date. Certain requirements had to be fulfilled, however, in order that the defendant could obtain his financing. One was a financial statement and the other requirement was that he had to furnish income tax statements.
The bank representative, who handled the application for the loan for the defendant, testified that the loan was formally denied by the bank on October 16, 1967, and that the defendant had evidently furnished the required documents to the bank, because such documents were required by the bank before they could actually take any action on the loan. Although they were not in the bank’s folio at the time of the trial they had evidently been returned to the defendant.
It was claimed by petitioner that the defendant was purposely delaying the securing of a loan so as to get out of the contract which he had signed. On this score, the Lower Court in its reasons for judgment said:
“Realizing that the financing was of the essence of the contract insofar as the seller was concerned, Mr. Joe Smither, the real estate salesman, then went to a bank with which he had done business before to make the necessary arrangements and then found out that the bank required a larger down payment from the purchaser. Instead of amending the original agreement with regard to the down payment, he made up a new agreement, keeping all of the same terms and even the same dates but changed that provision relating to the down payment to provide for 20 per cent cash. He then took this to Mr. Cutrer for approval and Mr. Cutrer signed it.
By that time it was evidently on or about October 9th, because he brought Mr. Cutrer physically to the bank to make an application for a loan, and the bank representative, Mr. Lee Griffin, testified that he took the application from the defendant on October 9th. Up to this point that leaves only six days, according to the agreement, for the parties to pass title to the property. However, certain requirements had to be fulfilled and met by the defendant in order that he could obtain this financing. One was a financial statement and *731 the other requirement was that he furnish income tax statements. Mr. Smith-er testified that he went out and asked that these things be furnished on three different days and that it was not done. However, the Court believes that Mr. Cutrer did do what was necessary toward obtaining these required items and called his accountant in Gonzales, and the information was furnished the bank, in my opinion, within a reasonable time after it was requested.
Were I satisfied in my mind that Mr. Cutrer was purposefully delaying, a different result would be reached, but the Court is not of that opinion. I know that Mr. Cutrer was leaving the matter of the financing up to the real estate agent Mr. Smither and did not consider, nor should he have considered under the circumstances, that it was his responsibility other than to cooperate, which the Court believes he did. As the evidence shows, the bank turned down Mr. Cutrer’s application for a loan on the sixteenth or seventeenth, and his time for taking title under the terms and conditions of the agreement to purchase had expired, and as he testified, he considered that he had no further obligation after that time. It is to be observed that the ninth was the first deadline to be met by Mr. Smither and he failed because the bank turned him down. This only left him six days to get financing before the time for taking title elapsed, and again, the bank turned him down even after that time.
The facts further show that Mr. Smith-er, even though he had been turned down by the Louisiana National Bank, still took the initiative toward obtaining a loan for Mr. Cutrer; and the Court believes he would have successfully obtained one from the Capital Building and Loan Association except that he could not get Mr. Cutrer’s cooperation at that time, as Mr. Cutrer would not go down with him to make an application. Mr. Cutrer testified that by that time, however, he had decided that he had no further obligation to take title to the property as it was not taken by the fifteenth, despite Mr. Parker Mead’s insistence to the contrary.”
We feel that the Lower Court was correct in its decision that Mr. Smither was actually handling the negotiation for the loan on the part of his client, the defendant, and that the defendant did not purposely delay the securing of the loan. The record discloses, as testified by Mr. Griffin, that application for the loan was made by defendant. The records which were required by the bank were subsequently furnished the bank by the defendant.
The petitioner further contends that the provision in a purchase agreement providing for the act of sale to be passed before a certain time is a stipulation solely in favor of the seller which might be waived by the seller. Accordingly, they maintain that as the prospective vendor was still willing to pass the sale some few days after the deadline, that the defendant was still obligated to secure a loan and close the act of sale on the subject property.
In support of their contention, they cite Kenny v. Welderin, 220 La. 285, 56 So.2d 550. In that case the Court held that the purchase agreement had terminated because the purchaser had not complied with his obligation within the stipulated time period. The case further held that the fifteen day time limitation period was one “obviously inserted for the protection of the vendor, placing a limitation on the condition in the vendee’s favor * * * ” Nowhere in that decision did the Court state that the vendor could waive the time limitation as is contended by the petitioner herein. The question there was whether or not the vendee could extend or waive the time limitation without the consent of the vendor and the Court answered by saying that such a time limitation could not be waived solely by the vendee and thus clearly implied that neither could it be waived solely by the vendor.
*732 In Fontenot v. Huguet, 230 La. 483, 89 So.2d 45 (1956), the vendee argued that the time limitation could be waived and that it was only an incidental matter in the contract. In holding that the vendor had the right to withdraw from the contract after the expiration of the time period, the Court stated “ * * * in Louisiana, time is of the essence in a contract to sell which specifies a period in which title must be passed.” It logically follows that an oral waiver of a written provision in a contract to sell or purchase, would not suffice to modify the terms of the contract.
Furthermore, in Giammanchere v. DiGiovanni, La.App., 43 So.2d 274 (1949), the petitioner argued that the time limitation had been orally waived by the defendant and for that reason petitioner had not been in default in the contract. The Court there said “ * * * this was a contract to purchase and sell real estate, and any extension of time for performance, where failure to comply, ipso facto, places the offeror in default, would, of necessity, have to be in writing in order to comply with the requisites contained in Civil Code, Article 2276.” The rationale in the Giammanchere decision and the well settled jurisprudence of this State with regard to written contracts is that a written agreement is needed in order to modify a written purchase agreement or contract to sell. See DiCristina v. Weiser, 215 La. 1115, 42 So.2d 868. To allow an oral waiver of such an important provision in a written contract, would be to ignore the dignity of a written instrument. Petitioner’s argument that the time limitation could be waived at the will of the vendor is simply without merit, as same would place the vendee at a decided disadvantage in that, whereas the vendor would not be obligated subsequent to the time limitation, the vendee would remain obligated for some indefinite period of time.
The Lower Court relied for its decision upon the provisions of Article 2038 of the Louisiana Civil Code which provides that when a contract has been made upon a condition, that an event shall happen within a limited time, the contract is considered as broken when the time has expired without the event taking place. The record discloses that the defendant did everything humanly possible to secure a loan at the Louisiana National Bank and in no way does the record reflect that he deliberately delayed and refused to obtain the necessary financing. He applied for the loan, supplied the bank with all necessary information, and, in due time was turned down as a poor credit risk.
We feel that the Lower Court was correct in holding that at the expiration of the time period stated in the contract, the contract itself expired and along with it, the obligations of both parties involved. With the running of the time period, the vendor was not bound to the contract and it logically follows that the obligations of the vendee likewise came to an end. For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.