PETTIGREW, J.
The instant suit involves various issues concerning professional liability coverage procured by plaintiff, Postlethwaite and Netterville, APAC (“P & N”), from defendant, Royal Indemnity Company (“Royal”). Following a hearing on cross-motions for summary judgment, the trial court rendered partial summary judgment in favor of P & N, finding that P & N had timely *592 exercised its rights to an extended reporting period endorsement and that Royal was obligated to provide P & N with a defense in connection with malpractice claims made against P & N in a separate proceeding. For the reasons set forth below, we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
In September 2000, P & N, a professional accounting firm located in Baton Rouge, Louisiana, purchased professional liability insurance coverage from Royal. Royal issued an “Accountants & Consultants Professional Liability Policy” (“Royal Policy”) to P & N, bearing policy number RZD391992. According to the Royal Policy, the policy period was “from 9/15/00 to 9/15/01 At 12:01 A.M. Standard Time.” The Royal Policy, which was purchased by P & N through Louisiana Companies, Inc. (“Louisiana Companies”), was a “claims made policy” designed to provide coverage to P & N for damages and associated defense expenses resulting from an act, error or omission, or personal injury arising out of the performance of professional services. The Royal Policy provided coverage for claims made against P & N and reported to Royal during the policy period. According to the record, prior to the expiration of the Royal Policy, a decision was made not to renew the coverage through Royal, but rather to procure P & N’s professional liability insurance coverage through Kemper Insurance Companies (“Kemper”). This policy was also a “claims made policy” that extended coverage to P & N from “09/15/01 TO 09/15/03.”
As is the case with most professional liability policies, the Royal Policy included certain terms and provisions that gave P & N the right, for an additional premium, to have an extended reporting period endorsement (“ERP”) issued by Royal, extending the time during which claims could be reported. According to the Royal Policy, P & N could exercise its right to the ERP by (1) requesting it within sixty days of the end of the 14policy period; (2) having paid all premiums due for the policy at the time of the request; and (3) promptly paying when due the additional premium for the endorsement. Once exercised, the ERP provided coverage for claims for “acts, errors, or omissions committed before the end of the Policy Period.” Moreover, during an ERP, coverage under the Royal Policy applied “as excess over any valid and collectible insurance available under policies in force after such [ERP] starts.”
On October 15, 2001, Union Planters Bank, N.A. (“Union”) filed a Request for Review of Claims against P & N before the Society of Louisiana Public Accountants, seeking institution of a public accounting review panel pursuant to La. R.S. 37:109, et seq. The Union claim alleged certain acts, errors, and omissions by P & N in connection with audit services that P & N had performed for one of Union’s commercial borrowers, Commercial Capital Holding Corporation (“CCHC”), and further alleged that Union detrimentally relied on said audit services in connection with defaulted loans made to CCHC. P & N was first notified that it had been named as a defendant in connection with the Union claim on October 30, 2001. P & N immediately notified Louisiana Companies of the Union claim and forwarded a copy of the claim by facsimile transmission. On the same day, Louisiana Companies faxed correspondence to Royal’s claims department notifying it of the Union claim. Thereafter, on November 14, 2001, CCHC filed a claim against P & N in the Nineteenth Judicial District Court, raising allegations similar to those raised in the Union claim. On the same date, counsel for P & *593 N delivered correspondence to Royal, through Louisiana Companies, providing Royal with a second written notice of the Union claim, giving notice of the recently filed CCHC claim, and demanding that Royal provide P & N with a defense.
On November 14, 2001, P & N exercised its right to the ERP for an additional one year period as afforded under the Royal Policy. According to the record, P & N tendered a check to the Louisiana Companies on November 14, 2001, made payable to Royal, in the amount of $41,850.00, representing the additional premium for the ERP endorsement. On that same date, Louisiana Companies forwarded correspondence by facsimile and regular mail to Jorgensen & Company (“Jorgensen”), Royal’s managing | .^general agent, advising Jorgensen that P & N had elected to exercise its right to the ERP for a period of one year and that the premium for same would be forwarded by overnight mail. On November 17, 2001, Jorgensen sent correspondence to Louisiana Companies, acknowledging that it had received the written request for the ERP on November 14, 2001, at 1:58 p.m., but advising that based on the provisions of the Royal Policy, the request was not timely and that Royal would likely not provide P & N with the ERP. By letter dated November 21, 2001, Royal advised Jorgensen that it was returning P & N’s premium check, noting that it was “unable to process the requested ERP ... due to the fact the exercise period [had] expired.” A copy of this correspondence was subsequently forwarded to Louisiana Companies and P & N on November 26, 2001.
Royal’s refusal to issue the requested ERP to P & N prompted the instant suit by P & N. In a petition filed December 14, 2001, P & N sought the following relief: (1) a declaratory judgment that P & N timely exercised its right to the ERP afforded under the Royal Policy; (2) an order requiring Royal to issue P & N an ERP for a period of one year from the end of the original policy period; (3) a declaratory judgment that Royal has a duty to provide P & N with a defense and indemnity in connection with the claims filed against it; (4) a declaratory judgment that Royal has breached its duties of good faith and fair dealing to P & N in its refusal to issue an ERP; and (5) an order requiring Royal to pay all general and special damages, costs, penalties, and attorney fees resulting from said breach.
On June 13, 2002, P & N filed a motion for partial summary judgment against Royal, seeking judgment declaring that P & N timely exercised its right to the ERP afforded under the Royal Policy, thus requiring Royal to provide P & N with a defense and issue an ERP for a period of one year. Attached to this motion for partial summary judgment were the following exhibits: (1) a statement of uncontested facts; (2) the affidavit of Fernie Wood, Jr., Vice President of Louisiana Companies; (3) a copy of the Royal Policy; (4) a copy of P & N’s premium check in the amount of $41,850.00 dated November 14, 2001; (5) copies of the various letters concerning P & N’s decision to |fiexercise its right to the ERP in the Royal Policy; and (6) the affidavit of Randal J. Robert, counsel of record for P & N, with copies, attached thereto, of the pleadings that served as the basis for the claims filed against P & N by Union and CCHC.
In response to P & N’s motion for partial summary judgment, Royal filed a cross-motion for summary judgment on July 19, 2002, along with its opposition to P & N’s motion. In support of the argument that it owed no obligation to P & N to provide coverage or a defense in the underlying lawsuits, Royal submitted the following: (1) a statement of uncontested *594 material facts; (2) a copy of the Royal Policy; (3) the deposition of Fernie Wood, Jr.; (4) the deposition of Ralph J. Stevens, administrative director of P & N; and (5) copies of the various letters that were also submitted by P & N in support of its motion for partial summary judgment.
On August 5, 2002, the trial court heard arguments on the motion for partial summary judgment filed by P & N and Royal’s cross-motion for summary judgment. After considering the allegations contained in the motions and the evidence submitted in support thereof, the trial court granted P & N’s motion for partial summary judgment, finding that P & N timely exercised its rights to the ERP, ordering Royal to issue an ERP for the period extending from September 15, 2001 at 12:01 a.m. to September 15, 2002 at 12:01 a.m., and ordering Royal to provide P & N with a defense in connection with the claims made by Union and CCHC. The court further denied Royal’s cross-motion for summary judgment.
Following the August 5, 2002 hearing on the motions, P & N submitted a proposed judgment and a motion to designate the judgment as final for purposes of appeal. Royal objected to the terms of the proposed judgment and to the designation of the judgment as final, arguing that P & N’s motion for partial summary judgment did not include the issue of Royal’s duty to defend and that the trial court had not made a specific determination that Royal owed P & N a defense in the underlying claims. Royal alleged that “whether or not P & N timely exercised its option to purchase the ERP is, in and of itself, not determinative of coverage or Royal’s alleged obligation to provide a defense.” The motion to designate the judgment as final proceeded to hearing before |7the trial court on August 23, 2002, at which time the motion was granted by the trial court. A judgment in accordance with the court’s findings was signed on August 27, 2002. It is from this judgment that Royal has appealed, presenting the following issues[1] for our review:
1) Whether the trial court erred, as a matter of law, in granting P & N’s Partial Motion for Summary Judgment on the issue of the ERP where, under the clear and unambiguous language of the policy, as well as plaintiffs own admis *595 sions, P & N did not timely request the optional ERP?
2) Whether the trial court erred, as a matter of law, in failing to grant Royal’s Cross-Motion for Summary Judgment and in refusing to enforce the Royal policy as written where plaintiff did not request the ERP, as required under the policy, “within Sixty (60) days of the end of the Policy Period?”
3) Whether the trial court erred, as a matter of law, in holding that Royal is obligated to provide a defense in the underlying malpractice action despite the fact that there has been no judicial determination regarding coverage and plaintiffs petition unambiguously excludes coverage under the Royal “claims made” policy?
Prior to the court’s ruling on the motion to designate the judgment as final, Royal filed an “Exception Of No Cause Of Action Or, Alternatively, Motion For Summary Judgment Regarding Plaintiffs Claim For Defense Costs Incurred In The Underlying Lawsuit.” Therein, Royal claimed that P & N had no cause of action against it for defense costs, because only the insurer currently defending the malpractice suit (Kemper) could claim reimbursement of those costs through subrogation. The matter proceeded to hearing on September 16, 2002, at which time P & N contended that Royal was attempting to re-litigate the duty to defend issue, which had already been decided by lathe trial court. Royal responded that even if there was a duty to defend, P & N was not the proper party to claim costs of the defense as those had been assumed by P & N’s primary insurer, Kemper. After hearing argument from the parties, the judge opined that the duty to defend issue was on appeal, thus, divesting the trial court of jurisdiction on that issue. Based on this lack of jurisdiction, the court concluded, “I’m going to deny the exception of no cause at this time.” A judgment in accordance therewith was signed on September 23, 2002.
Following the court’s September 23, 2002 judgment, Royal filed an application for supervisory writs with this court, requesting that the trial court’s judgment improperly denying its “Exception Of No Cause Of Action Or, Alternatively, Motion For Summary Judgment Regarding Plaintiffs Claim For Defense Costs Incurred In The Underlying Lawsuit” be reversed or, alternatively, that the writ application be consolidated with the instant appeal. On March 10, 2003, this court ordered that the writ application bearing docket number 2002 CW 2162 “be referred to the same panel to which 2003 CA 0063 is assigned” and denied the motion to consolidate based on the action taken with regard to the writ application. Thus, the issues raised in Royal’s writ application are also before us for review.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Co-op., Inc., 2001-2956, p. 3 (LaApp. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., 2002-0338, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
*596 |flIn determining whether summary-judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, 2002-1072, p. 5 (La.4/9/03), 842 So.2d 373, 377. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637.
In its first two assignments of error, Royal contends the trial court committed manifest error in granting P & N’s motion for partial summary judgment and in denying Royal’s cross-motion for summary judgment on the issue of the ERP. Arguing that the terms of the Royal Policy were clear, express, and unambiguous, Royal alleges that P & N’s attempt to purchase the ERP on November 14, 2001, was not timely as a matter of law. Moreover, Royal asserts that La. Civ.Code art. 1784, the article relied on by P & N in its motion for partial summary judgment and in the instant appeal, is inapplicable because the policy period at issue is marked by a specific date and time. Royal argues that because there is no ambiguity in the Royal Policy regarding the policy period, there is “no justification for referring to the general articles on interpretation of a contract [such as Article 1784].”
In response, P & N alleges that because the time period within which to exercise the option to purchase an ERP in the Royal Policy is not marked by a specific date, but rather a period of time, Article 1784 is applicable. P & N contends that the event that marks the beginning of the term is the end of the policy period, i.e., September 15, 2001, and thus, the sixty day period within which to exercise the ERP did not begin to run until September 16, 2001, and included the entirety of the sixtieth day, November 14, 2001. Therefore, P & N asserts, it timely exercised its option to purchase the ERP when it notified Royal, through Louisiana Companies, and tendered its premium Inpayment on November 14, 2001. Following our review of the record and the applicable substantive law, we agree with P & N.
Louisiana’s rule of law regarding the computation of time periods when a term for performance is not fixed is set forth in La. Civ.Code art. 1784 as follows:
When the term for performance of an obligation is not marked by a specific date but is rather a period of time, the term begins to run on the day after the contract is made, or on the day after the occurrence of the event that marks the beginning of the term, and it includes the last day of the period.
Moreover, it is well settled that in computing the time prescribed by law within which to perform an act, only whole days, not fractions thereof, are considered. McIntire v. Carpenter, 202 So.2d 297, 299 (La.App. 4 Cir.), writ denied, 251 La. 57, 202 So.2d 661 (1967). See also Housing Authority of Town of Lake Arthur v. T. Miller & Sons, 239 La. 966, 981, 120 So.2d 494, 500 (1960).
As previously indicated, P & N could exercise its option to purchase the ERP at issue by (1) requesting it within sixty days of the end of the policy period; (2) having paid all premiums due for the policy at the time of the request; and (3) promptly paying when due the additional premium for the endorsement. The Royal Policy also contained a separate endorsement that affected various aspects of the Royal Policy, including the portion concerning the ERP. *597 According to the language in this endorsement, the right to have the ERP issued would terminate sixty days after the end of the policy period unless written notice of the election to exercise the ERP, together with the additional premium due for such ERP, was received by Royal or its authorized agent within the sixty-day period.
In the instant case, the term for exercising the option to purchase the ERP was within sixty days of the end of the policy period, i.e., within sixty days of September 15, 2001. Thus, pursuant to the dictates of Article 1784 and the authorities cited above, this term began to run on the following day, September 16, 2001, and included the entirety of the sixtieth day, November 14, 2001. Accordingly, P & N timely exercised the option to purchase the ERP at issue. Having so determined, we must next consider whether P & N complied with the additional requirement set forth in the endorsement 11, discussed above, i.e., was the premium due for the ERP received by either Royal or its authorized agent within the sixty-day period.
Royal argued below that Louisiana Companies was not its appointed agent for the purpose of procuring the professional liability policy at issue. Thus, Royal alleged, even if the term for exercising the ERP was from September 16, 2001 through November 14, 2001, P & N’s attempt to purchase the ERP was still untimely as the request for the ERP and the additional premium due was not received by either Royal or its authorized agent within the sixty-day period.
As correctly pointed out by P & N below, La. R.S. 22:1118(E), as it existed at the time of the events giving rise to this litigation,[2] statutorily mandated an agency relationship for the purposes of the collection of premiums. It provided as follows:
(1) Any insurer which issues or delivers a policy or contract of insurance pursuant to the application or request of an agent or broker who is not authorized to represent said insured as an agent shall be deemed to have authorized such agent or broker to act on insurer’s behalf as payment of any premium on such policy or contract of insurance. The payment to an agent or broker shall be payment to the insurer with all resultant obligations and duties.
(2) This Subsection establishes any agency relationship only for the matter of collection of premiums specifically referred to herein.
The jurisprudence interpreting La. R.S. 22:1118 and its predecessor, La. R.S. 22:1180, makes it clear that the purpose of this statute is to protect the insured. It mandates a statutory relationship of agency between the insurance agent and the insurer as to the collection of premiums. See, DeSoto Parish School Board v. Insurance Company of North America, 572 So.2d 310, 314 (La.App. 2 Cir.1990), writ denied, 575 So.2d 368 (La.1991); New Orleans Property Development, Ltd. v. Aetna Casualty and Surety Company, 93-0692, pp. 2-3 (La.App. 1 Cir. 4/8/94), 642 So.2d 1312, 1318 (on rehearing).
There is testimony in the record before us that Louisiana Companies was not an appointed agent for Royal with regard to the professional liability policy procured for |i;.P & N. Nonetheless, according to Fernie Wood, Jr., Vice President of Louisiana Companies, he could not recall ever advising P & N that he did not have authority to bind the requested coverage with Royal. In fact, Mr. Wood indicated *598 he had previously accepted premium payments from P & N, deducted the commission earned for placing the coverage with Royal, and then remitted the premium payments to either Royal or its managing general agent, Jorgensen. Moreover, Ralph J. Stevens, administrative director of P & N, testified that P & N had conducted business with Louisiana Companies for approximately twenty years and that it was his understanding that Mr. Wood was an agent for Royal and had authority to bind insurance for Royal. Based on our review of the instant record, and in light of the provisions of La. R.S. 22:1118(E), we conclude that P & N’s tender of the premium check to Louisiana Companies on November 14, 2001, was binding on Royal. Thus, P & N timely exercised its option to purchase the ERP at issue. We find no error in the trial court’s judgment granting P & N’s motion for partial summary judgment, denying Royal’s cross-motion for summary judgment, finding that P & N timely exercised its option to purchase the ERP, and ordering Royal to issue an ERP to P & N for the period extending from September 15, 2001 to September 15, 2002. Accordingly, those portions of the August 27, 2002 judgment are hereby affirmed.
DUTY TO DEFEND
In assignment of error number three, Royal contends the trial court erred in holding that it was obligated to defend P & N in the underlying malpractice action as there had been no judicial determination regarding the coverage issue. Royal further alleges that regardless of whether P & N timely exercised its option to purchase the ERP or timely reported the malpractice claim, there was still no coverage under the “claims made” policy because the claim against P & N was not made during the policy period.
In its August 27, 2002 judgment, the trial court found as follows with regard to Royal’s duty to defend P & N:
5. In connection with the judgment granting the P & N Motion [for Partial Summary Judgment], and as prayed for in the Motion, Royal is hereby ordered to provide P & N with a defense in connection with the claims made against P & N by [Union] and [CCHC].
|13As previously indicated, during an ERP under the Royal Policy, coverage applied “as excess over any valid and collectible insurance available under policies in force after such [ERP] starts.” Effective September 15, 2001, P & N procured professional liability coverage through Kem-per. Thus, under the terms of the Royal Policy, any coverage under the ERP at issue was excess and would only come into play if the coverage under the Kemper policy was completely exhausted. There is simply no evidence in the record to suggest that the coverage afforded P & N under the Kemper policy was exhausted. Although the trial court ordered Royal to provide P & N with a defense, there was no specific finding by the court concerning the issue of coverage. Accordingly, it was premature for the trial court to address the issue of the duty to defend. This portion of the August 27, 2002 judgment is reversed, and the matter is remanded to the trial court for a determination of whether there is coverage under the Royal Policy.
ROYAL’S WRIT APPLICATION
The issues raised by Royal in its writ application in docket number 2002 CW 2162 are interrelated with the duty to defend issue raised by Royal on appeal. Based on our review of Royal’s writ application and the evidence submitted in support of same, we agree with the trial court’s finding that it was divested of juris *599 diction regarding the duty to defend issue because the issue was on appeal. Thus, the trial court was correct, at the time, in its decision to deny Royal’s exception raising the objection of no cause of action. However, based on our decision above concerning the duty to defend issue, we grant the instant writ application, reverse the September 23, 2002 judgment, and remand.
CONCLUSION
For the above and foregoing reasons, that portion of the August 27, 2002 judgment ordering Royal to provide P & N with a defense in connection with the malpractice claims filed against P & N by Union and CCHC is reversed, and the matter is remanded to the trial court for a determination of whether there is coverage under the Royal Policy. In all other respects, the judgment is affirmed. Further, Royal’s writ application under docket number 2002 CW 2162 is granted, and the trial court’s | ^judgment dated September 23, 2002, is reversed. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion. All costs associated with this appeal are assessed equally against Royal and P & N.
AUGUST 27, 2002 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. WRIT GRANTED; SEPTEMBER 23, 2002 JUDGMENT REVERSED AND REMANDED.
McCLENDON, J., concurs and assigns reasons.

. Royal has also assigned error to the trial court’s decision to designate the judgment as final and appealable under La.Code Civ. P. art. 1915(B). We note that this court has previously held that a partial summary judgment on the issue of an insurer’s duty to defend is properly appealable under Article 1915. See Dennis v. Finish Line, Inc., 93-0638, pp. 3-4 (La.App. 1 Cir. 3/11/94), 636 So.2d 944, 946, writ denied, 94-1652 (La. 10/7/94), 644 So.2d 636; Treadway v. Vaughn, 633 So.2d 626, 627-628 (La.App. 1 Cir.1993), writ denied, 94-0293 (La.3/25/94), 635 So.2d 233. In the instant case, the trial court stated that after considering the factors enumerated in Van ex rel. White v. Davis, 2000-0206 (La.App. 1 Cir. 2/16/01), 808 So.2d 478, it found the judgment at issue should be designated as final and decided by the appellate court "because so much litigation is hinging on this.” The court continued, noting as follows: "If there's no coverage, if I’m wrong and there is no coverage under this policy, then there would be really an economic detriment to your client [P & N], I think it's in your very best interest that this matter be resolved by the courts of appeal.” Pursuant to Article 1915(B), the trial court designated the judgment as final and made an express determination that there was no just reason for delay. The court also provided oral reasons for its determination. Nonetheless, this court is not bound by the trial court’s certification of the partial summary judgment as final for the purpose of an immediate appeal. Rather, we must review the record de novo to determine finality. See Van ex rel. White v. Davis, 2000-0206 at 5, 808 So.2d at 483. After a de novo review of the record before us, we agree with the trial court that this is a final appealable judgment and find no error in the trial court's designation as such.

. Louisiana Revised Statutes 22:1118(E), formerly La. R.S. 22:1180, was repealed effective January 1, 2002, by 2001 La. Acts No. 158, § 2, and has been replaced by La. R.S. 22:1150(A). The text of La. R.S. 22:1150(A) is nearly identical to that of its predecessor.