**WALLACE INDUSTRIAL CONSTRUC-TORS, a Division of C. Wallace Industries, Inc., and Glen Falls Insurance Company**

v.

**LOUISIANA ELECTRIC COOPERA-TIVE, INC.**

**Civ. A. No. 70–142.**

United States District Court,
M. D. Louisiana.

Sept. 20, 1972.

W. P. Wray, Jr., Wray & Robinson, Baton Rouge, La., for plaintiffs.

John Schwab, Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

This suit arises out of an error contained in a bid submitted by the plaintiff, Wallace Industrial Constructors, to the defendant, Louisiana Electric Cooperative, Inc., for the construction of an electric generating plant. Wallace submitted a bid price of $1,393,929.00, but shortly after the opening of the bids, Wallace discovered that it had inadvertently omitted a $354,174.00 figure from its total. As one of the requirements of bidding on the job, Wallace, through the plaintiff, Glen Falls Insurance Company, posted a 10 per cent bid bond. Within hours after the bids were opened, and eight days before the defendant attempted to accept Wallace's bid, the defendant, Louisiana Electric, knew of the mistake Wallace had made. It nevertheless attempted to accept Wallace's bid and when Wallace refused to sign the contract, Louisiana Electric declared the 10 per cent bid bond forfeited. Plaintiffs bring this suit seeking a rescission of the Wallace bid and a rescission of the Glen Falls 10 per cent bid bond, while defendant, Louisiana Electric, seeks a forfeiture of the 10 per cent bid bond. The facts have been stipulated to by all parties, and filed in the record hereof. The stipulated facts pertinent to this decision are as follows:

## FINDINGS OF FACT

1.

Wallace Industrial Constructors, a Division of C. Wallace Industries, Inc. (Wallace) is a Texas corporation having its principal office in the State of Texas, qualified to do and doing business in the State of Texas, qualified to do and doing business in the State of Louisiana, with its principal office in the State of Louisiana, Parish of East Baton Rouge, Louisiana.

2.

Glen Falls Insurance Company (Glen Falls) is a corporation organized and existing under and by virtue of the laws of a state other than Louisiana, its principal office located in Glen Falls, New York, qualified to do and doing business in the State of Louisiana.

3.

Louisiana Electric Cooperative, Inc. (Louisiana Electric) is a corporation organized and existing under and by virtue of the laws of the State of Louisiana, with its domicile in the Parish of East Baton Rouge, State of Louisiana.

4.

The controversy between plaintiffs and defendant arose out of Wallace's withdrawal of a bid, without forfeiture of bid bond, in connection with an erroneous lump sum proposal or bid for the construction of certain improvements to immovable property located in the State of Louisiana. The bid submitted was in the sum of $1,393,929.00. The error involved the sum of $354,174.00. The bid bond provided for the penal sum of 10 per cent of the amount of the bid.

5.

The Notice to Bidders provides in part as follows:

"5. Each Proposal must be accompanied by a Bid Bond in the form attached or a certified check on a bank that is a member of the Federal Deposit Insurance Corporation, payable to the order of the Owner, in an amount equal to ten per cent (10%) of the maximum bid price. Each bidder agrees, provided its Proposal is one of the three low Proposals, that by filing its Proposal together with such Bid Bond or check in consideration of the Owner's receiving and considering such Proposal, said Proposal shall be firm and binding upon each such Owner until a Proposal is accepted and a satisfactory Contractor's

Bond is furnished by the successful Bidder and such acceptance has been approved by the Administrator, or for a period not to exceed sixty (60) days from the date hereinbefore set for the opening of Proposals whichever period shall be the shorter. If such Proposal is not one of the three low Proposals, the Bid Bond or check will be returned in each instance within a period of ten (10) days to the Bidder furnishing same."

6.

Louisiana Electric is and was the owner of the immovable property proposed to have an electric generating plant constructed or built thereon for Louisiana Electric's use and enjoyment. Louisiana Electric is an electric cooperative engaged in the generation and transmission of electrical power in the State of Louisiana and as such, is and has been the owner of electrical generating plants and distribution systems, serving numerous areas of Louisiana with electricity.

7.

Wallace is and has been engaged in the construction business, particularly the industrial construction business and has been so engaged for many years in the gulf south states. Wallace submitted a bid which concerned the construction of a portion of Louisiana Electric's proposed generating plant.

8.

Glen Falls Insurance Company is and has been engaged in the surety business and was the surety for Wallace in connection with the bid involved in this matter.

9.

Some time prior to May 19, 1970, Louisiana Electric engaged the services of Bovay Engineers, Inc. of Baton Rouge, Louisiana, and Burns & McDonnell Engineering Company of Kansas City, Missouri, herein called Louisiana Electric's Engineers, in connection with Louisiana Electric's plans for the construction of an electric generating plant, which was to be part of Louisiana Electric's system known as Louisiana 30 Bayou. The proposed construction was and has been financed pursuant to a loan contract between Louisiana Electric and the United States of America acting through the Administrator of the Rural Electrification Administration (herein called "Administrator").

10.

The plans and specifications for the electric generating plant of Louisiana 30 Bayou were prepared by Louisiana Electric's Engineers.

11.

Some time prior to April 13, 1970, Louisiana Electric caused written notice and instructions to bidders to be promulgated in connection with the construction of a part of the electric generating plant, which part was referred to as Contract G 26–Power Piping portion of the electric generating plant of Louisiana Electric to be received by Louisiana Electric on or before 10:00 a. m., May 19, 1970, at Louisiana Electric's office at 665 West Main Street, New Roads, Louisiana 70760.

12.

In accordance with the notice and instructions to bidders, Wallace acquired a copy of the plans and specifications, forms and other documents for bidders from Louisiana Electric's Engineers for the payment of $100.00, all as provided in said Notice and Instructions to Bidders, in connection with said Contract G 26–Power Piping.

13.

Wallace obtained its copy of plans and specifications, forms and other bid docu-

ments from Louisiana Electric's Engineers on April 13, 1970. There were three (3) addenda issued by the Engineers which were designated as Addendum No. 1, May 7, 1970, Addendum 2, May 12, 1970, and Addendum 3, May 13, 1970, which were issued by Louisiana Electric's Engineers all of which were received by Wallace prior to May 19, 1970.

14.

It was necessary for the Chief Estimator and a Vice President of Wallace to work with subcontractors in Baton Rouge, Louisiana, on subcontractor bids of some of the piping work called for by the Plans and Specifications. Such preparation usually occurs immediately prior to the bid date in the construction industry. The work with these subcontractors was completed on May 18, 1970, and the final compilation of the bid completed on May 18, 1970, and the morning of May 19, 1970.

15.

There is no issue between the parties as to Wallace's experience or qualifications. Wallace was and is a qualified bidder and contractor for such construction projects as proposed by Louisiana Electric, Wallace having had experience in similar construction projects and having an experienced and qualified estimating department assigned to this project, and at the time the bid was submitted Wallace was approved by the Rural Electrification Administration for such construction projects. Wallace followed procedures which have been used by Wallace for many years and which are the same as those accepted as customary in the construction industry.

16.

There is no issue between the parties as to the error made by Wallace, the substance of that error, or the honesty or good faith of either party in connection therewith. The error was one of procedure which caused an omission which was made in the course of preparing the lump sum proposal or bid submitted by Wallace. Through inadvertence, Wallace failed to include the estimates of cost for "special items" as required by Division 5 of the Specifications and failed to include the estimates of cost for fabrication and erection of carbon steel and chrome moly piping as required by other portions of the bid documents. For the fact of simplicity, we shall hereafter refer to the special items required by Division 5 of the specifications as the "special items" and to the carbon steel and chrome moly piping fabrication and erection as the "pipe items."

17.

The omission of the special items and the pipe items on the Wallace estimate summary caused the estimated cost of materials and labor as summarized thereon to be in error and as a consequence of these omissions, no calculation or consideration was made for sales taxes, payroll taxes, insurance or markup for overhead and profit with respect to the items omitted, i. e., the special items and the pipe items. The mistake resulted in the lump sum proposal or bid of Wallace being $354,174.00 in error.

18.

The erroneous lump sum proposal or bid submitted by Wallace amounted to $1,393,929.00.

19.

On May 19, 1970, at 10:00 a. m., Wallace submitted its lump sum bid, containing the error described hereinabove, which was unknown to Wallace at the time of submitting the bid for the construction of said project to Louisiana Electric at 665 West Main Street, New Roads, Louisiana, with bid bond as provided in the instructions, with Wallace as principal and Glen Falls as surety. On and after 10:00 a. m. on May 19, 1970, at 665 West Main Street, New Roads, Louisiana, Louisiana Electric

publicly opened the bids submitted by Wallace and others which bids were submitted by the following firms in the amounts shown opposite their names:

| BIDDER | |
|---|---|
| (7) Tompkins-Beckwith, Inc. | $2,427,000.00 |
| (6) Grinnel Company | 2,180,000.00 |
| (5) Fegels Power Service | 2,162,000.00 |
| (4) Plant Service Corporation | 1,969,200.00 |
| (3) Homer-Knost Company | 1,832,743.00 |
| (2) Gibson-Hart Company | 1,656,000.00 |
| (1) Wallace Industrial Constructors | 1,393,929.00 |

20.

At the opening of the bids, Wallace was the apparent low bidder as may be seen by reference to the above bids. Because of the discrepancy between the low bid of Wallace and the next low bid, i. e., that of Gibson-Hart Company, Wallace and its personnel became concerned about its bid and on the same day, i. e., May 19, 1970, began retracing and rechecking its bid. In the late hours of May 19, 1970, or the early hours of May 20, 1970, Wallace discovered the error which had been made. The tentative amount of the error appeared to be approximately $353,000.00.

21.

Wallace immediately notified Louisiana Electric of Wallace's error in the preparation of its lump sum proposal or bid price and the nature and substance thereof, along with its desire to withdraw same without forfeiture of the bond.

22.

On May 21, 1970, Wallace and representatives of Louisiana Electric met at Wallace's request and Wallace demonstrated the manner in which the error occurred, etc., the nature and substance which as of that date had been determined to be in the sum of $354,174.00 and Wallace reiterated its intention to withdraw its bid without forfeiture of bond.

23.

On May 21, 1970, Bovay Engineers and Burns and McDonnell Engineering Company, acting through Leonard B. Immele, P. E., advised Louisiana Electric of Wallace's intentions to withdraw the erroneous bid without forfeiture of the bid bond predicated upon the mistake in preparing its bid. However, said Engineers recommended to Louisiana Electric that the contract be awarded to Wallace for the sum of $1,393,929.00 and further recommended that should Wallace refuse or fail to furnish satisfactory contractual bond within ten (10) days of written notification that the contract be awarded to Gibson-Hart Company for the bid price of $1,656,000.00. The recommendations of the engineers were accepted by Louisiana Electric's Board of Directors as shown by the minutes of its meeting of May 26, 1970.

24.

On May 26, 1970, the Board of Directors of Louisiana Electric met and voted to accept Wallace's bid and voted to award the contract for project to Wallace for the sum of $1,393,929.00 and directed delivery of the proposed contract in that sum to Wallace for execution. Proposed contracts in the sum of $1,393,929.00 were delivered to Wallace at its Baton Rouge office on May 27, 1970, by a representative of Louisiana Electric, with the request for execution within ten (10) days by Wallace, as will be seen by reference to a letter from Louisiana Electric to Wallace dated May 27, 1970.

25.

On June 17, 1970, at Wallace's request, a meeting was held with representatives of Louisiana Electric's Board of Directors, at which time the nature and substance of Wallace's error in the preparation of its lump sum proposal or bid was demonstrated and the unexecuted contracts were delivered to said representatives with Wallace's demand for return of the bid and the bid bond without forfeiture pursuant to its withdrawal thereof.

### 26.

On June 25, 1970, Louisiana Electric through its counsel, made formal demand upon Wallace and Glen Falls for payment of the sum of $139,392.90 and threatened litigation to collect same if payment was not made within ten (10) days thereafter.

### 27.

At no time during these proceedings has Louisiana Electric submitted its acceptance of the bid of Wallace to the Administrator for the Administrator's approval and the acceptance of Wallace's lump sum proposal or bid price by Louisiana Electric has not been approved, orally or in writing, by the Administrator at any time.

### 28.

On June 16, 1970, Louisiana Electric entered into a contract for Contract G 26–Power Piping, Louisiana 30 Bayou with the next low bidder, namely Gibson-Hart Company, for the amount of the bid of Gibson-Hart Company of May 19, 1970, in the sum of $1,656,000.00. On July 2, 1970, Louisiana Electric was informed by Benjamin Jankowski, Jr., Chief, Power Plant Branch, Power Supply Division of the Rural Electrification Administration, of the approval of construction contract G 26–Power Piping, dated June 16, 1970, with Gibson-Hart Company.

### 29.

On the 10th day of July, 1970, Wallace and Glen Falls initiated this suit for declaratory judgment in favor of Wallace and Glen Falls and against Louisiana Electric decreeing the rescission of the bid of Wallace and the bond of Glen Falls and placing the parties in status quo and decreeing that Louisiana Electric is not entitled to forfeit the bid bond of Glen Falls or to collect any sum or sums whatsoever from Wallace or Glen Falls. Louisiana Electric filed answer to same and subsequently filed counterclaim praying for judgment against Glen Falls in the sum of $139,392.90 and against Wallace for the same sum, together with judgment against Glen Falls for reasonable attorney fees pursuant to Louisiana Revised Statutes 22:658.

## CONCLUSIONS OF LAW

■■ While defendant acknowledges that there is substantial authority at common law to support the plaintiffs' demand that, under the circumstances of this case, it should not be required to forfeit its 10 per cent bid bond, they assert nevertheless that it is the law of Louisiana which must govern this case. We agree with both of these contentions. See Peerless Casualty Company v. Housing Authority, 228 F.2d 376 (CA 5—1955); Moffett, Hodgkins and Clarke Co. v. Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108; M. J. McGough Co. v. Jane Lamb Memorial Hospital, 302 F. Supp. 482 (S.D.Iowa—1969). But we also conclude that the same result must follow an application of Louisiana law to the facts of this case. The defendant cites primarily two Louisiana cases and several Civil Code Articles in support of its contention that even under the stipulated facts of this case, Louisiana law requires that the plaintiff be made to forfeit the 10 per cent bid bond put up by it at the time of submitting its bid proposal. Defendant cites Robert G. Claitor v. Delta Corp. of Baton Rouge, Inc., No. 129,634 on the docket of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, which case is presently on appeal to the Louisiana First Circuit Court of Appeal, and Housing Authority of Lake Arthur v. T. Miller & Sons, 239 La. 966, 120 So.2d 494 (1960). But these cases simply do not support the defendant's contentions. In *Housing Authority,* the defendant had submitted a bid pursuant to a bid form which stated that the plaintiff had thirty days to accept. On the 30th day the defendant attempted to withdraw his bid apparently without giving any reason therefor. Before this attempted withdrawal, the plaintiff had

approved the bid, had it approved by the Public Housing Authority, and sent word of its acceptance to the defendant. There was no claim of error in that case and the plaintiff had affirmatively decided to accept the bid before the attempted withdrawal of the offer took place. In *Claitor,* a bid was submitted and the plaintiff had studied the bid, decided to accept it, and tried to communicate its acceptance to the defendant before the defendant discovered it had made a $7,500.00 error and tried to rescind the bid. In its opinion, the Court in *Claitor* cited *Housing Authority* and said it controlled because it found the situation in the two cases to be somewhat similar. In the course of its opinion the Court also said:

> " * * * that the instant error was not one of such significance as would justify an inference the plaintiff was aware of the error at the time it decided to accept defendant's bid, or that plaintiff is attempting to take an unfair advantage of the defendant. On the facts presented, therefore, the holding in Harrelson v. Raphel (sic) 116 So.2d 301 (Orl.1959) is inappropriate for the simple reason that in *Harrelson,* the defendant knew of the contractor's error and attempted to take advantage of it."

In Harrelson v. Raphael, 116 So.2d 301 (La.App., Orl.1959), cited by the Court in *Claitor,* the plaintiff made an error in adding up estimates on his bid to do certain work. The defendant was aware of the fact that the plaintiff had failed to include one item in his total but nevertheless accepted the bid. In holding that under these facts no contract resulted the Court said:

> "Since we feel that the plaintiff made an error in addition and feel also that the defendant realized this error and sought to take advantage of it, we think that the minds of the parties did not meet and that consequently no contract resulted." 116 So.2d 301, 303.

The stipulated facts in the present case show conclusively that the minds of the parties did not meet sufficiently to effectuate a binding contract. Plaintiff discovered his error immediately following the opening of the bids on May 19, 1970, and immediately communicated his discovery to the defendant. The error was of such magnitude ($354,174.00), or 25 per cent of the total contract price, that it must be considered as materially affecting the very substance of the contract. There is no question but that the plaintiff would not have attempted to enter into this contract had he known the $354,174.00 figure had been omitted from the total. The principal cause for the plaintiff attempting to enter into the contract was the expectation of receiving a price therefor which included the total of all of its estimates on the various phases of the work. Without this expectation, it is obvious that no bid would have been submitted by the plaintiff. The bid submitted by the plaintiff, by mistake and inadvertence, omitted one of the primary causes of the proposed contract, i. e., the sum of $354,174.00, omitted by error from the total bid price. No one denies that the omission of this figure was a good faith error. There was no detrimental reliance involved. Defendant was notified of the error before it even considered the various bids. The bids were opened on May 19, 1970, and in the late hours of that very same day, or at the latest, in the very early hours of the following day, Wallace discovered its error and immediately communicated it to the defendant. It was not until eight days after the defendant had been advised of this very substantial error that it knowingly, purposefully, and intentionally attempted to hold plaintiff to this bid price when it knew that the bid had been submitted in error. The defendant knew, of course, that the plaintiff could not perform the work called for in the contract for the total shown on its bid. This is evident from the fact that the defendant inquired of its engineers as to whether or not it should attempt to hold the plaintiff to the bid. The defendant was advised by its engineers to do so,

**682**

but at the same time was advised to award the contract to the next highest bidder if the plaintiff refused to enter into the contract. Both the defendant and its engineers knew, of course, that the plaintiff could not possibly afford to enter into the contract in view of the large error contained in its bid.

Louisiana law recognizes the need for the application of equitable principles to situations where it is required. See La. Rev.C.C. Art. 21, 1963, 1964. As stated in La.R.C.C. Art. 1965:

> "The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. \* \* \*"

If ever there was a case for the application of that principle we have it before us here. To permit the plaintiff to recover its 10 per cent bid bond in this case will result in the defendant losing nothing other than the unconscionable gain which it seeks by taking advantage of the plaintiff's honest mistake. To deny the plaintiff recovery of its 10 per cent bid bond would be to permit the defendant to be unjustly enriched at the expense of the plaintiff, and as a result of an alleged contract which simply should not be considered as having been consummated because of a complete lack of a meeting of the minds of the parties involved. Both the law of Louisiana and a recognition of the equitable principles involved require that the plaintiff prevail in this case and that there be judgment herein decreeing the rescission of the bid submitted by the plaintiff Wallace, and decreeing that the defendant, Louisiana Electric Cooperative, Inc., is not entitled to receive or retain the 10 per cent bid bond posted by the plaintiff Wallace and/or Glen Falls Insurance Company at the time of submitting the Wallace bid.