DICK CORPORATION and American Casualty Company of Reading, Pennsylvania, Plaintiffs,

v.

ASSOCIATED ELECTRIC COOPERATIVE, INC., Defendant.

Civ. A. No. 79–3128–CV–S.

United States District Court, W. D. Missouri, S. D.

June 6, 1979.

Emanuel F. Abbate, Jarvis, Pilz, Buckley & Treacy, New York City, F. Philip Kirwan, Margolin & Kirwan, Kansas City, Mo., for plaintiffs.

Eugene E. Andereck, Stockard, Andereck, Hauck, Sharp & Evans, Jefferson City, Mo., for defendant.

Findings of Fact and Conclusions of Law

JOHN W. OLIVER, Chief Judge.

This cause came on for trial and the court, having heard the evidence and considered the stipulation of the parties, finds the facts and states the conclusions of law as follows:

### FINDINGS OF FACT

1. Dick Corporation (hereinafter "Dick") is a Pennsylvania corporation having its principal office in Large, Pennsylvania, qualified to do and doing business in the State of Pennsylvania and qualified to do and doing business in the State of Missouri with its principal office in the State of

Missouri being located at Sikeston, Missouri.

2. American Casualty Company of Reading, Pennsylvania (hereinafter "American") is a corporation organized and existing under and by virtue of the laws of a State other than Missouri with its principal office being located in Pittsburgh, Pennsylvania, qualified to do and doing business in the State of Missouri.

3. Associated Electric Cooperative, Inc. (hereinafter "AECI") is a corporation organized and existing under and by virtue of the laws of the State of Missouri with its domicile in Springfield, Missouri.

4. The controversy between the plaintiffs and defendant arises out of the discovery that a bid submitted by Dick contained an erroneous lump sum price proposal for the construction of certain improvements to a project described in certain plans, specifications, and drawings relating to Contract No. 353—Power Plant Structures, located in Moberly, Missouri. The bid submitted was in the sum of $13,600,-000, instead of the sum of $14,600,000. The error involved the sum of $1,000,000. As required, a bid bond in the penal sum of ten percent (10%) of the bid price was provided.

5. The notice and instructions to bidders provides in part as follows:

"7. Bid Bond. Each Proposal must be accompanied by a Bid Bond in the form attached or a certified check on a bank that is a member of the Federal Deposit Insurance Corporation, payable to the order of the Owner, in an amount equal to ten percent (10%) of the maximum bid price. Each Bidder agrees, provided its Proposal is one of the three low Proposals, that, by filing its Proposal together with such Bid Bond or check in consideration of the Owner's receiving and considering such Proposal, said Proposal shall be firm and binding upon each such Bidder and such Bid Bond or check shall be held by the Owner until a Proposal is accepted and a satisfactory Contractor's Bond is furnished by the successful Bidder and such acceptance has been approved by the Administrator, or for a period not to exceed sixty (60) days from the date hereinbefore set for the opening of Proposals, whichever period shall be the shorter. If such Proposal is not one of the three low Proposals, the Bid Bond or check will be returned in each instance within a period of ten (10) days to the Bidder furnishing same."

6. AECI is and was the owner of the Thomas Hill Power Plant, Unit No. 3, proposed to have the power plant structures constructed or built thereon for AECI's use and enjoyment. AECI is an electrical cooperative engaged in the generation and transmission of electrical power in the State of Missouri and as such is and has been the owner of electrical generating plants and distribution systems serving numerous areas of Missouri with electricity.

7. Dick has been and is engaged in the construction business, particularly the industrial business and as such has been engaged for many years in numerous states in the United States. Dick submitted a bid which concerned the construction of the Thomas Hill Power Plant extension of the proposed project which is an extension to the existing plan.

8. American is and has been engaged in the surety business and was the surety for Dick in connection with the bid involved in this matter.

9. Some time prior to May 21, 1979, AECI engaged the services of Burns & McDonnell Engineering Company of Kansas City, Missouri (hereinafter "Burns & McDonnell") in connection with AECI's plan for the construction of an extension to the existing Thomas Hill Power Plant.

10. The proposed construction was and has been financed pursuant to a loan contract between AECI and the United States of America acting through the Administrator of the Rural Electrification Administration (hereafter "Administrator").

11. The plans and specifications for the project were prepared by Burns & McDonnell.

12. Some time prior to May 21, 1979, AECI caused written notice and instruc-

tions to bidders to be promulgated in connection with the construction of the extension of the existing Thomas Hill Power Plant which part was referred to as Contract 353—Power Plant Structures (hereinafter the "Contract") for which bids were to be received by AECI on or before 3:00 o'clock p. m. on May 21, 1979 at Burns & McDonnell's office at 4600 East 63rd Street, Kansas City, Missouri, 64141.

13. In accordance with the notice and instructions to bidders, Dick acquired a copy of the plans and specifications forms and other documents for bidders from Burns & McDonnell upon the payment of $200.00 all as provided in said notice and instructions to bidders in connection with the Contract (Plaintiffs' Exhibit 1).

14. There were two (2) Addenda issued by Burns & McDonnell which were designated as Addendum No. 1 dated April 27, 1979 and Addendum No. 2 dated May 11, 1979 which were received by Dick prior to May 21, 1979 (Plaintiffs' Exhibit 1).

15. There is no issue between the parties as to Dick's experience and qualifications. Dick was and is a qualified bidder and contractor for such construction projects as proposed by AECI, Dick having had experience in similar construction projects and having an experienced and qualified estimating department assigned to this project and at the time the bid was submitted Dick was approved by the Rural Electrification Administration for such construction projects. Dick followed procedures which have been used by Dick and which are the same as those accepted as customary in the construction industry.

16. It was necessary for the Estimating Party Chief of Dick to take prices from numerous subcontractors for the various parts of the work called for by the plans and specifications as well as to prepare an estimate for the cost of that portion of the work which was to be performed by Dick. Such preparation occurred immediately prior to the bid submission time as is customary in the construction industry. Putting the bid together was completed on the morning of May 21, 1979, with the final compilation of the bid completed within a half-hour before the lump sum price was submitted to Burns & McDonnell in the specified form.

17. Dick had rented rooms in a motel in Kansas City, Missouri and sent two representatives to the offices of Burns & McDonnell to await a telephone call immediately prior to the submission of bids for the final number. A summary of the various prices was prepared by the Estimating Party Chief, Mr. Ron Yingling, with the final talley being placed on the sheet immediately before the bid price was telephoned for entry upon the bid proposal sheet (Plaintiffs' Exhibit 2).

18. There is no issue between the parties as to the error made by Dick, the substance of that error or the honesty or good faith of either party in connection therewith. The error was one of procedure which caused an omission which was made in the course of preparing the lump sum proposal or bid submitted by Dick. Through inadvertence, when transferring the amount designated as Dick's bid item for "plant" which was the field overhead and general conditions item contemplated by Dick on its plant sheet in the sum of $1,100,000, the number $100,000 was placed on the summary sheet (Plaintiffs' Exhibits 3 and 4). This error resulted in the sum of $1,000,000 not being included in the total bid price. The omission caused the estimated cost of direct labor, material and subcontract work as summarized on the summary sheet to be in error. As a consequence of this mistake, the lump sum proposal or bid of Dick resulted in a $1,000,000 error.

19. The erroneous lump sum proposal or bid submitted by Dick amounted to $13,-600,000.

20. On May 21, 1979, at about 2:45 p. m., Dick submitted its lump sum bid containing the error described in Finding No. 19 which was unknown to Dick at the time of submitting the bid for the construction of said project to Burns & McDonnell at 4600 East 63rd Street, Kansas City, Missouri 64141, with the bid bond as provided in the instructions and with Dick as principal and American as surety.

21. On or after 3:00 p. m. on May 21, 1979, Burns & McDonnell publicly opened the bids submitted by Dick and others which were bids submitted by the following firms in the amounts shown opposite their names:

| | |
|---|---|
| (6) Sharp Brothers Construction Co. | $ 18,577,655 |
| (5) Boecon Corporation | 16,998,000 |
| (4) Morrison Knudsen Co., Inc. | 16,950,000 |
| (3) M. A. Mortenson Co. | 15,995,000 |
| (2) J. S. Alberici Construction Co. | 15,674,000 |
| (1) Dick Corporation | 13,600,000 |

22. At the opening of the bids, Dick was the apparent low bidder as may be seen by reference to the above bids. Because of the discrepancy between the low bidder, Dick, and the next low bid of J. S. Alberici Construction Co., Burns & McDonnell inquired as to whether Dick had a problem with its bid. Dick and its personnel acknowledged their concern with the large spread in prices and on the same day began retracing and rechecking its bid. In the late hours of May 21, 1979, Dick discovered the error which had been made. The amount of the error was $1,000,000.

23. On the morning of May 22, 1979, Dick telephoned Burns & McDonnell, the agent of AECI, and notified them that it discovered the error made in the preparation of its lump sum proposal or bid price and explained the nature and substance thereof along with its desire to withdraw said bid without forfeiture of the bond.

24. At 11:29 a. m. on May 22, 1979, by telegram, Dick confirmed the substance of the telephone conversation with Burns & McDonnell to the effect that Dick made a transposition mistake from its work sheets to its summary sheets in the amount of $1,000,000 in its bid for the Contract. (Plaintiffs' Exhibit 5).

25. Burns & McDonnell had immediately notified its principal, AECI, of Dick's error in the preparation of its lump sum proposal or bid price.

26. Dick requested a meeting with AECI and Burns & McDonnell in order that it might explain to the owner the way the mistake occurred.

27. The meeting was scheduled for 2:00 p. m. on May 24, 1979 at the Springfield, Missouri office of AECI.

28. Meanwhile, on the night of May 23, 1979, the Board of AECI directed Burns & McDonnell to send Dick a notice of award based on the erroneous proposal for the firm price of $13,600,000. This letter was deemed by AECI to be a notice to commence work (Plaintiffs' Exhibit 6).

29. On May 24, 1979 at 2:00 p. m. representatives of Dick, AECI and Burns & McDonnell met at AECI's offices in Springfield, Missouri. Dick demonstrated the manner in which the error occurred, etc., the nature and substance of which had been determined to be a mistake of $1,000,000 and Dick reiterated its intention to withdraw its bid without forfeiture of the bond.

30. From the testimony adduced from Mr. Yingling, it is clear, and AECI does not deny, that the mistake when transferring the numbers from the work sheets to the summary sheet was a good faith error inadvertently made.

31. On May 30, 1979, Gerald F. Diddle, General Manager of AECI and Eugene Andereck, Esq., Counsel to AECI, advised Dick that although they did not dispute the fact that the mistake was legitimate, they had decided to make the award of the bid to Dick and to send the contract documents to Dick for signature and acceptance of the contract.

32. AECI stated that if Dick did not execute the proposed contract documents and commence the work within ten (10) days of the receipt thereof, AECI would award the contract to the second low bidder, J. S. Alberici Construction Co.

33. AECI stated that it did not disagree that the legal principles put forth by Dick as justification for equitable relief by way of entitlement to withdraw the bid were recognized principles in many jurisdictions. They stated, however, there was no case law on this subject in the State of Missouri.

34. AECI stated that if Dick were authorized to withdraw its bid and the award was made to the next low bidder, AECI

would have to pay $1,074,000 over the price that Dick would have bid, but for the mistake (i. e.) $15,674,000 instead of the $14,600,000 intended to be Dick's bid price.

35. Dick asked if AECI would make claim on the bid bond provided by American in the event the contract were awarded to the second low bidder or make claim for the difference between the $14,600,000 which Dick intended to bid and the price bid by the second low bidder.

36. AECI stated that the law of Missouri was not clear on the subject and although the Board had not decided whether it would call on the bonding company to pay on the bid bond, it also had not decided that it would not do so.

37. AECI stated that it would prefer the alternate relief of a reformation of the contract to reflect the correct amount of Dick's bid (i. e.) $14,600,000, if it had the authority of judicial sanction since the reformed bid price would still be $1,074,000 less than the second low bid.

38. Dick agreed that it could and would perform the work at its originally intended price of $14,600,000 if it was so authorized by judicial declaration and that in the alternative, it would request to be permitted to withdraw its bid in accordance with the equitable relief authorized by the vast majority of the States, the Federal cases in Board of Contract Appeals' decisions and the Model Procurement Code which is being considered for adoption by most of the States including Missouri.

39. At no time during these proceedings has AECI submitted its acceptance of the bid of Dick to the Administrator for the Administrator's approval and acceptance of Dick's erroneous lump sum proposal, nor has it been approved, orally or in writing, by the Administrator at any time.

40. Counsel for AECI conferred with the Rural Electrification Administration representatives who were advised of the situation being faced and voiced no objection to the procedure being followed and did not seek to be made a party to any proceedings being contemplated.

41. The contract is one phase of several phases of work contemplated by this $700,000,000 improvement and as such is critical to the timing of the construction planned. Any delay in the commencement of the work on this contract will have a disastrous effect on the schedule thereby causing great financial damage to AECI.

42. It would be to the best interest of AECI to have the contract reformed rather than to allow Dick to withdraw its bid.

43. Dick is prepared to accept the award of the reformed contract at the corrected price of $14,600,000 and will execute the contract documents within the time limit provided if the court sanctions the reformation of the contract.

44. No other bidder will be adversely affected by the reformation since the corrected price is still $1,074,000 lower than the second low bidder.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter of the case and of all necessary parties to this action for declaratory judgment.

2. Independent research establishes that the parties have properly agreed that there is no directly applicable Missouri case law on the question presented by this case. The Court is therefore under duty to determine what law the Missouri courts would apply if the question were presented to a Missouri court. Cf. *Hacker v. Rector,* 250 F.Supp. 300 (W.D.Mo.1966) and *Adams Dairy Company v. National Dairy Products Corp.,* 293 F.Supp. 1135 (W.D.Mo.1968). We are satisfied that a Missouri court would apply the principles of law and equity stated in the various paragraphs of the conclusions of law made herein.

3. Even where there are provisions against withdrawal of bids once submitted, it has become well settled that if equitable relief against a remediable unilateral mistake in a bid becomes necessary to prevent injustice, there is nothing in such provisions which can be construed to prevent it and they are not applicable to interfere with the

process of equity. *Moffett, Hodgkins & Clarke Co. v. Rochester,* 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108 (1900).

4. Where a bidder for a public contract makes a unilateral mistake in preparing its bid, which is otherwise remediable, he may have equitable relief by rescission or cancellation, or in the nature thereof, where the notice was reasonably prompt and the offeree has not altered its position so that relief would work a hardship upon it, and there are no other circumstances which would render it inequitable to grant such relief. See cases collected in 52 A.L.R.2d 792. See also *M. J. McGough Company v. Jane Lamb Memorial Hospital,* 302 F.Supp. 482 (S.D.Iowa 1969) and cases cited therein.

5. The prerequisites for obtaining appropriate equitable relief are: 1) the mistake is of such consequence that enforcement would be unconscionable; 2) the mistake must relate to the substance of the consideration; 3) the mistake must have occurred regardless of the exercise of ordinary care; and 4) it must be possible to place the other party in status quo. See, e. g., *Peerless Casualty Co. v. Housing Authority,* 228 F.2d 376 (5th Cir. 1955); *Mount St. Mary's College v. Aetna Casualty & Surety Co.,* 233 F.Supp. 787 (D.Md.1964), aff'd per curiam 344 F.2d 331 (4th Cir. 1965); *Highway Commission v. State Const. Co.,* 203 Or. 414, 280 P.2d 370, 52 A.L.R.2d 779 (1955); *Wallace Industrial Constructors v. Louisiana Electric Cooperative, Inc.,* 348 F.Supp. 675 (M.D.La.1972), 472 F.2d 1407 (5th Cir. 1973).

6. The equitable remedy of reformation is an available and appropriate remedy under the circumstances of this case. We are convinced that a Missouri court would so hold. Cf. *Chris Berg v. United States,* 1970, 426 F.2d 314, 192 Ct.Cl. 176. See also and compare *C. N. Monroe Manufacturing Company v. United States,* 143 F.Supp. 449 (E.D.Mich.1956).

7. The evidence is clear and convincing both as to the existence of the mistake and as to the bid price actually intended. Since the bid price, both as uncorrected and corrected, is the lowest received, it is the determination of this Court that equity will best be served by having the bid price submitted by Dick corrected from $13,600,000 to $14,600,000, rather than by permitting the withdrawal or rescission of the award to Dick Corporation.

8. The notice to proceed dated May 23, 1979, should be amended to reflect the change in the amount shown therein from $13,600,000 to $14,600,000. As amended, the notice should remain in effect, *nunc pro tunc.*

IT IS SO ORDERED. Counsel for plaintiff shall prepare and submit to counsel for defendant for approval as to form an appropriate judgment in accordance herewith.